940 S.W.2d 332 (1997)
In the Matter of S.J., a Child.
No. 04-96-00282-CV.
Court of Appeals of Texas, San Antonio.
February 12, 1997.
Rehearing Overruled March 14, 1997.
*334 Marsha Lynn Merrill, San Antonio, for appellant.
Edward F. Shaughnessy, III, Laura Bohlman, Assistant Criminal District Attorney, San Antonio, for appellee.
Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

OPINION
HARDBERGER, Chief Justice.

Introduction
This is an appeal from an order modifying the probation of the appellant child, S.J. S.J. was initially placed on probation for the offense of burglary of a vehicle. The State claimed that S.J. violated his probation by committing the offense of aggravated robbery and moved to modify S.J.'s probation. Following a bench trial, the court found that S.J. did violate his probation and committed him to the Texas Youth Commission. S.J. appeals from the Amended Order of Commitment entered on December 18, 1995.
In four points of error, S.J. claims that (1) the trial court erred by failing to admonish him pursuant to section 54.03(b)(2) of the Texas Family Code; (2) the evidence is factually insufficient to support a finding that he violated the conditions of his probation; (3) the trial court erred in conversing with the State during the State's closing argument; and (4) the trial court erred by refusing to correct the Amended Order of Commitment by deleting unnecessary language. We affirm the judgment as reformed.

Admonishments
In his first point of error, S.J. claims that the trial court erred by failing to admonish him pursuant to section 54.03(b)(2) of the Texas Family Code. Section 54.03(b)(2) provides:
(b) At the beginning of the adjudication hearing, the juvenile court judge shall explain to the child and his parent, guardian, or guardian ad litem:
....
(2) the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding.
TEX.FAM.CODE ANN. § 54.03(b)(2) (Vernon 1996). S.J. claims that the trial judge did not comply with this provision because nothing in the record shows that S.J. was aware of the "nature and possible consequences of the proceedings." S.J. concedes that there is no requirement that the admonishments required for acceptance of guilty pleas be given at a hearing on a motion to modify, because the original admonitions from the adjudication hearing carry over into the disposition. See TEX.FAM.CODE ANN. § 54.03(b) (requiring admonishments only in adjudication hearings). However, S.J. claims that the record is devoid of any admonitions given at any point in the proceedings against him.
S.J.'s complaints regarding the lack of admonitions at the prior adjudication proceeding constitute a collateral attack on the final judgment of adjudication issued previously by the trial court. S.J., in this appeal of a probation revocation, asks this court to render the underlying adjudication void based on the trial court's failure to admonish S.J. in the original adjudication proceeding. Nevertheless, this court has jurisdiction to consider S.J.'s complaints regarding the lack of admonishments in the adjudication proceeding because a total failure to admonish a child accused of delinquent conduct is fundamental error, I.G. v. State, 727 S.W.2d 96, 99 (Tex.App.San Antonio 1987, no writ), and an original conviction may be collaterally attacked on appeal from an order revoking probation if fundamental error was committed. Huggins v. State, 544 S.W.2d 147, 148 (Tex.Crim.App.1976) (citing Ramirez v. State, 486 S.W.2d 373 (Tex.Crim.App.1972)).
Our review of this point of error is complicated, though, by the incomplete record presented in this appeal. A record was made at the hearing on the motion to modify, and it does not reflect that any admonishments were given. However, it appears that no record was made at the prior proceedings, although the record is contradictory. The record first reflects that S.J. waived his right to have the adjudication and disposition proceedings *335 recorded. However, the record also names the court reporter scheduled to record the disposition hearing. If no record was made of the initial proceedings, it is impossible to determine if admonishments were given previously.
The burden is on the appellant to ensure that a sufficient record is presented to show error requiring reversal. TEX. R.APP.P. 50(d). A presumption exists as to the regularity of conviction proceedings and the resulting judgment, absent a showing to the contrary. Ex parte Wilson, 716 S.W.2d 953, 956 (Tex.Crim.App.1986). In keeping with this presumption, we would normally be required to presume in this case that admonitions were given in the adjudication proceedings because the record fails to demonstrate that none were given. S.J. argues, however, that the presumption should not arise in this case because the lack of a record at the prior proceedings constitutes error pursuant to section 54.09 of the Texas Family Code, which provides that "[a]ll judicial proceedings under this chapter except detention hearings shall be recorded by stenographic notes or by electronic, mechanical, or other appropriate means." See TEX.FAM.CODE ANN. § 54.09 (emphasis added). This assertion in itself, though, constitutes a collateral attack on the final judgment rendered in the adjudication proceeding. Accordingly, S.J.'s complaint regarding the lack of a record in the adjudication proceedings is subject to our review in this appeal of a probation revocation only if the trial court's failure to have the proceedings recorded would constitute fundamental error. See Huggins, 544 S.W.2d at 148.
We need not decide whether a trial court's failure to have the adjudication proceedings recorded constitutes fundamental error, however, because even assuming such a failure is fundamental error, no such error occurred in this case. The appellant in the case before us waived his right to have the adjudication and disposition proceedings recorded. S.J., joined by his attorney, executed a "Waiver of Right to Have Court Proceedings Recorded." The Texas Family Code expressly provides for the waiver by juveniles of the rights granted them under the Code:
(a) Unless a contrary intent clearly appears elsewhere in this title, any right granted to a child by this title or by the constitution or laws of this state or the United States may be waived in proceedings under this title if:
(1) the waiver is made by the child and the attorney for the child;
(2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;
(3) the waiver is voluntary; and
(4) the waiver is made in writing or in court proceedings that are recorded.
TEX.FAM.CODE ANN. § 51.09(a)(1)-(4). The waiver signed by S.J. complied with the provisions of this section. It was made by the child and his attorney, it was in writing, and it stated that the waiver was made voluntarily, with full knowledge of S.J.'s rights to have the proceedings recorded, "and with full knowledge of the possible consequences of waiving said rights."
S.J. nevertheless argues that it is the statutory duty of the court to record its judicial proceedings, and that the right to have the adjudication and disposition proceedings recorded cannot be waived under any circumstances. S.J. contends that the Family Code's use of the word "shall" in section 54.09 indicates a "contrary intent" under section 51.09 to allowing a waiver of the right to have proceedings recorded. We cannot agree with this contention. First, this court has noted that a juvenile can waive his right to be admonished under section 54.03(b)the very statute at the heart of S.J.'s complaint in this point of erroreven though that section provides that a trial court "shall" admonish a juvenile. I.G., 727 S.W.2d at 98 n. 1. Moreover, at least one court of appeals has implied that the right to have proceedings recorded may be waived. See S.S. v. State, 879 S.W.2d 395, 397 (Tex.App.Eastland 1994, no writ) (stating that it was error to not record proceedings because there was no showing that minor waived right to have proceedings recorded).
In sum, S.J. cannot show error, either in the proceeding to revoke his probation or the *336 adjudication proceeding, without a record of the adjudication proceedings demonstrating that no admonishments were given previously. Because we find that S.J. waived his right to this record, no error is shown and S.J.'s first point of error is overruled.

Factual Insufficiency of the Evidence
In his second point of error, S.J. claims that the evidence is factually insufficient to support the court's finding that he violated the conditions of his probation. In reviewing a complaint that the evidence is factually insufficient in a juvenile case, this court must consider all of the evidence to determine whether the evidence supporting the finding is so weak, or the evidence to the contrary so overwhelming, that the finding should be set aside and a new trial ordered. In re L.G., 728 S.W.2d 939, 943 (Tex.App. Austin 1987, writ ref'd n.r.e.); In re Y.S., 602 S.W.2d 402, 405 (Tex.Civ.App.Amarillo 1980, no writ). To prevail on a motion to modify, the State must prove "beyond a reasonable doubt that the child violated a reasonable and lawful order of the court." TEX. FAM.CODE ANN. § 54.05(f).
S.J. argues that the evidence is insufficient to show beyond a reasonable doubt that he violated his probation order because the testimony of two eyewitnesses, including the complainant, established that the offense occurred at a time that S.J. had an airtight alibihe was home on electronic monitoring. The first eyewitness was called by the State and was the fourteen-year-old boy who claimed that S.J. robbed him at gunpoint. This witness testified that the person who robbed him had something over his head, but that he knew it was S.J. because he recognized his voice, haircut, and tattoos. The complainant knew S.J. from school. The State elicited detailed testimony from the complainant as to when the robbery took place. The complainant testified that he was robbed sometime between 3:36 and 4:00 p.m. He was sure of the time because school let out at a little after 3:00 p.m., the bus picked him up at 3:10 p.m., it was a twenty to thirty minute ride to his drop-off point, and the robbery occurred about six or seven minutes after he was dropped off.
An independent eyewitness to the robbery, Mrs. Cameron, was called to testify by S.J. Mrs. Cameron testified that the perpetrator was covered from head to toe, and that the robbery took place sometime between 3:30 and 3:45 p.m. She was certain of the time because she had a clock outside that she used to keep track of the time so that she could go back inside and check on her handicapped brother.
The problem with the time frame pinpointed by these two witnesses is that S.J. presented evidence that he was home on electronic monitoring between 3:35 and 4:14 p.m. David Norman, a juvenile probation officer in charge of electronic monitoring, testified that S.J. wore a transmitter on his ankle with which the probation department monitored his movements. Norman stated that his records reflect that S.J. came straight home from school and was at home from 3:35 p.m. until 4:14 p.m., at which time he moved out of the range of the monitor.
The evidence tending to establish that the robbery took place after the time during which S.J. was home on electronic monitoring came from a detective with the San Antonio Police Department. The detective testified that the call reporting the robbery was received at 7:20 p.m., and that an officer arrived twelve minutes later at 7:32 p.m. The police reports indicated that the robbery occurred at approximately 7:00 p.m. The complainant was cross-examined regarding the discrepancy between the time on the police reports and the time he stated the robbery occurred. He testified that he did not tell the police the robbery occurred at 7:00 p.m., and maintained that the robbery occurred before 4:00 p.m.
In sum, the evidence elicited at trial was contradictory and supported both S.J. and the complainant's versions of the events. However, we cannot agree that the evidence supporting the trial court's finding that S.J. violated his probation was so weak, or the evidence to the contrary so overwhelming, that the court's finding should be set aside and a new trial ordered. In juvenile cases, the trier of fact is the sole judge of the credibility of witnesses and the weight to be *337 afforded their testimony, and it is for the trier of fact to resolve conflicts and contradictions in the evidence. In re G.M.P., 909 S.W.2d 198, 203 (Tex.App.Houston [14th Dist.] 1995, no writ). The trial judge in this
favor of the complainant, and we will not disturb the decision of the trier of fact in this regard. S.J.'s second point of error is overruled.

Dialogue Between Court and State During Closing Argument
S.J. claims in his third point of error that the trial court erred by engaging in dialogue with the State during the State's closing argument. S.J. contends that the court compromised its impartiality and elicited unsworn testimony from the State. The dialogue at issue is as follows:
COURT: Let me help you out. This might narrow it down. You have your complainant saying this happened between 3:40 and 3:50, and you have Mrs. Cameron saying it happened around a quarter to 4:00, and the descriptions of what happened are pretty accurate. There is a discrepancy about whether the person had his arms covered or not. But that is the time frame by the complainant and this independent witness. So how do you get around this man being on the monitor?
STATE: We have got the printout from Mr. Norman that shows where he is off the monitor. He is at home at 3:35. He clicks the monitor off at 4:15. He is out of range. They don't know where he is. We have this police officer's testimony and the detective's testimony about when they were dispatched, and when they arrived at the scene, when they talked to the complainant and when they were cleared from the scene. Now I submit to the court that our thirteen year old is off on his time. It stays light in September. I think Mrs. Cameron is off on her time. She is out in the backyard all the time trying to escape from being in the house with her brother. What we have got is this child testifying on the stand that he went home and he called the police and it took the police thirty to forty minutes to get there. And then he made a report. So even if the police officer gets there at 7:20 or 7:21, and the child says it happened twenty to thirty minutes ago, and the officer puts down 7:05, that would be a more accurate time frame instead of saying back in September I think it happened at 3:45.
COURT: He was very clear that it happened right after school.
STATE: And he was clear about the little 48 and about the blunt tattoos. And his testimony is completely consistent with that of Mrs. Cameron, which is the defense's testimony.... This child, I am talking about the complainant in this case, was very specific for this court about what he knew about this child.... So this child was consistent on the stand with regard to the events that occurred. And we are stating that he is confused with regard to the time because I think the police officer's time is the time he responded and the time the child said it happened, which would have been 7:05, according to the police officer's report. He doesn't have any reason to lie....
COURT: So the State's position is that this didn't happen around 3:40?
STATE: The State's position is it happened pursuant to the time frame that this child gave the officer on the date it happened.
COURT: You mean at seven o'clock?

*338 STATE: Seven o'clock on the date it happened. One's memory is going to be better on the date it happened....
S.J. contends that the court's comments and questions demonstrate that it had become so entangled as an advocate for the State that it could not in the end render an objective finding. S.J. relies on Moreno v. State, 900 S.W.2d 357 (Tex.App.Texarkana 1995, no writ). Moreno involved a bench trial in which the judge extensively questioned a witness. Id. at 358-59. The Moreno court discussed the danger present even when trial is not to a jury when the judge goes beyond the bounds of permissible questioning. Id. at 359 The danger is that "the judge in the zeal of his or her active participation may become an advocate in the adversarial process and lose the neutral and detached role required for the fact finder and the judge." Id. After reviewing the question asked by the judge in Moreno, the court decided that the judgment should be affirmed because the record did not demonstrate that "the judge became so entangled as an advocate that he could not at the end of the proceeding make an objective finding of fact in the case." Id. at 360. By way of analogy, S.J. argues that the trial court in this case was not acting in a neutral and detached manner and exceeded its role when it attempted to "help out" the State during closing argument.
We disagree. Much like the judge in Moreno, the trial judge in this case appears to have been merely "seeking facts for [her] fact-finding role." See id. at 359. The judge in this case apparently felt that clarification was necessary as to the testimony regarding the time the incident occurred. We cannot agree that, in seeking to clarify this testimony, the trial judge sought to elicit testimony from the State as a witness. The record does not reveal that the trial judge in this case became so entangled as an advocate for the State that she could not make an objective finding of fact at the conclusion of the case. S.J.'s third point of error is overruled.

Unnecessary Language in Amended Order of Commitment
In his fourth and final point of error, S.J. claims that the trial court erred by refusing to correct its Amended Order of Commitment to the Texas Youth Commission because the order contained unnecessary language, the effect of which was to deprive S.J. of liberty without due process of law. The court initially entered an order of adjudication and an order of commitment to the Texas Youth Commission. S.J. filed a motion to conform the judgment, and the court then signed and entered the Amended Order of Commitment to the Texas Youth Commission. S.J. filed a motion to correct the amended order, which was denied.
S.J. argues that some of the language in the amended order would cause his minimum length of stay at the Texas Youth Commission to double. The language S.J. argues is unnecessary is underlined in the following excerpt from the amended order:
"Specifically, the court finds beyond a reasonable doubt that the child violated condition number one (1) of his conditions of probation in that on or about the 1ST day of SEPTEMBER, A.D., 1995, in the County of Bexar and the State of Texas, [S.J.], did then and there intentionally and knowingly threaten and place [J.M.], hereinafter called complainant, in fear of imminent bodily injury and death, by using and exhibiting a deadly weapon, NAMELY: A FIREARM, while in the course of committing theft of property, NAMELY: ONE (1) JACKET, from said complainant, the owner of said property, without the effective consent of the said complainant, and said acts were committed with the intent then and there to obtain and maintain control of the said property; that said act is an offense against the State of Texas of the Grade of Felony."

....
The Court specifically commits the respondent to the Texas Youth Commission because a weapon was used during the violation of a reasonable and lawful order of the court, the respondent has a drug abuse problem and the court previously granted the respondent probation on two previous occasions to no avail.
....
*339 The Court finds that this is the appropriate disposition for [S.J.] for the following reason: the Court determined that any other disposition available to the Court would be inappropriate after considering... the heinous and violent nature of the violation....
S.J. complains of this language because his classifying offense under the Texas Administrative Code for purposes of determining his minimum length of stay at the Texas Youth Commission is "the most serious of the relevant offenses documented in [his] record." 37 TEX.ADMIN.CODE § 85.23(b)(1) (West 1996). A relevant offense is the committing offense and any offense for which the child was on probation at the time of the committing offense. Id. § 85.23(b)(1). The committing offense is the most serious of the offenses found at the child's most recent judicial adjudication. Id. § 85.23(b)(2). The initial offense for which S.J. was placed on probation was burglary of a vehicle, but the most serious offense in his record, and the most serious offense found at his most recent judicial adjudication, would be the aggravated robbery offense because the order finds beyond a reasonable doubt that he committed aggravated robbery. The minimum length of stay for the classifying offense of burglary of a vehicle is six months in a medium or high restriction program. Id. § 85.25(b)(1)(H). The minimum length of stay for the classifying offense of aggravated robbery is twelve months, including the possibility of a "maximum restriction program." Id. § 85.25(b)(1)(C).
S.J. claims that subjecting him to double the minimum length of stay at the Texas Youth Commission via this order violates due process because he is deprived of a liberty interest with no right to a jury trial and no right to an adjudication on the underlying offense of aggravated robbery with a deadly weapon. We agree. The State had two choices in this situation. It could have filed an original petition seeking adjudication on the aggravated robbery charge, but S.J. would have then had a right to a jury trial under section 54.03 of the Texas Family Code and to other procedural safeguards that accompany an adjudication hearing. See In re G.M.P., 909 S.W.2d at 201 (noting that because adjudication of delinquency may result in juvenile's being deprived of liberty, juvenile is entitled to constitutional protections available in criminal trials). Alternatively, the State may, as it did in this case, choose not to adjudicate and instead file only a motion to modify probation, in which case the juvenile is not entitled to a jury at the modification hearing, and the hearing is merely a "hearing on the merits or facts" that need only comply with reduced due-process requirements for hearings to modify disposition. See J.K.A. v. State, 855 S.W.2d 58, 61-62 (Tex.App.Houston [14th Dist.] 1993, writ denied) (recognizing that modification hearing does not provide procedural safeguards found in adjudication hearing, such as admonitions and right to jury unless jury is waived). Because the State chose the modification route, we hold that the findings of aggravated robbery and use of a deadly weapon in the order are improper. S.J. is entitled to "due-process safeguards appropriate to the seriousness of the alleged offense and the degree of infringement on his liberty interest." See id. at 63-64.
In keeping with our holding, minor adjustments to the order are appropriate. Without these adjustments, the order creates serious classification implications, entitling S.J. to more procedural safeguards than those provided at his hearing on the motion to modify. The order contains unnecessary language concerning the specifics of the offense for which S.J.'s probation was revoked and S.J.'s use of a deadly weapon in the commission of such offense. The inclusion of this language may lead to confusion about what delinquent conduct was actually adjudicated. This confusion could result in S.J. being subjected to double the minimum length of stay at the Texas Youth Commission and could cause problems down the line because adjudications of delinquent conduct for felony offenses may be used for sentence enhancement purposes in criminal trials. The unnecessary language can be deleted and these problems may be avoided without running afoul of the Family Code's requirement that the court "specifically state in the order its reasons for modifying *340 the disposition." See TEX.FAM.CODE ANN. § 54.05(i).
Accordingly, we reform the Amended Order of Commitment to the Texas Youth Commission to delete any reference to the aggravated robbery offense based upon which S.J.'s probation was revoked, the specifics of that offense, and the fact that a weapon was used in the commission of that offense. The specificity requirement of section 54.05 may be satisfied by retaining those portions of the order which reflect generally that S.J. violated the first condition of his probation and, in so doing, violated a reasonable and lawful order of the court. We believe that language to this effect, combined with other language already in the order referring to S.J.'s drug abuse problem, his two previous attempts at probation, and the need to protect the community, is sufficient to pass the statutory requirements of commitment orders. We sustain S.J.'s fourth point of error and reform the Amended Order of Commitment to the Texas Youth Commission accordingly.
The judgment of the trial court is affirmed and the Amended Order of Commitment to the Texas Youth Commission is reformed in accordance with this opinion.