**Marcello MORENO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–94–00172–CR.**

Court of Appeals of Texas, Texarkana.

Submitted March 21, 1995.

Decided April 5, 1995.

Bruce Anton, Dallas, for appellant.

John C. Vance, Crim. Dist. Atty., Elizabeth A. Friday, Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Marcello Moreno appeals from a conviction of aggravated sexual assault and indecency with a child. Moreno was found guilty in a bench trial and sentenced to fifteen years' imprisonment.

By his sole point of error, Moreno contends that the trial court erred in personally conducting cross-examination of Moreno. At trial, Moreno took the stand in his own defense. After the prosecutor conducted a short cross-examination, the following exchange took place: [1]

[PROSECUTOR]: Didn't you think Martha might need a baby-sitter?

[WITNESS]: She was there, knew about it, she had different arrangements to [have] the kids watched.

THE COURT: Wait a second. Did you know this woman accused you of molesting the two children?

THE WITNESS: At that time?

THE COURT: On your way to the grandparent's (sic), did your father tell you what you were accused of doing?

THE WITNESS: Yes.

THE COURT: It was not going to stay at the grandparent's (sic) no big deal, you wanted to see them, this woman is accusing you of molesting her children, right?

THE WITNESS: Yeah.

THE COURT: You didn't think it was a big deal?

THE WITNESS: No. No. [A]t the time when I was leaving, I didn't think it was a big deal, when I was getting my stuff to leave. I thought I was going to my grandparent's (sic) to see them for the last few days that I was in town. But on the way down, what my dad explained to me why I was going to my grandparent's (sic) house.

THE COURT: You didn't think it was unusual that your dad would come tell you that you were out of there? How old were you at the time?

THE WITNESS: I was—I think 20.

THE COURT: You were 20 years old.

THE WITNESS: Yes.

THE COURT: Does your dad normally tell you where you're going to be living?

THE WITNESS: No.

THE COURT: Had you been talking to your father about moving to California?

THE WITNESS: No, he didn't live—he lived in San Antonio at the time.

THE COURT: He came all the way from San Antonio to take you to your grandparent's (sic) home?

THE WITNESS: He was up in Dallas. He was getting a new job, looking for a job in Dallas and he was staying our for a while.

THE COURT: Go ahead, Ms. Brooks.

During redirect the judge again asked questions:

[DEFENSE]: Did you feel that the children resented you living in their home?

[WITNESS]: Sometimes I did when I would punish them, but I just took it as the fact that I was punishing them and they didn't like me at the time.

[DEFENSE]: Did they ever express to you that they were displeased by your living in this home?

[WITNESS]: Sometimes they did.

[DEFENSE]: Did they ever express to you their displeasure about the music situation?

[WITNESS]: Sometimes in a joking matter [sic] they would.

THE COURT: They [sic] question is why you think these little girls are lying. That's the question. You think that be-

---

1. We have found it necessary to include a lengthy portion of the record to show the full extent of the judge's questioning.

cause you were strict on them? What's your theory here why are these little girls getting on the stand and crying telling me that you did this to them?

THE WITNESS: I get from this the only reason I can think of I was punishing, they resented me for some reason.

THE COURT: For making them sit in a corner, is that what you're saying?

THE WITNESS: Yes.

THE COURT: That's what you want me to believe?

THE WITNESS: I really don't know why they would come up with unless—I don't know. I don't know why they would think that. All I do is punish them, that's about it.

THE COURT: But you really think that's enough to justify them accusing you of this felony offense?

THE WITNESS: I personally don't know why they would accuse me of something like that.

THE COURT: Go ahead, Mr. Simmons.

■ The State contends that this point of error was waived because no objection was made to either instance when the judge personally questioned the witness. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. TEX. R.APP.P. 52. More specifically, where no objection is made, remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous. *Brewer v. State,* 572 S.W.2d 719, 721 (Tex.Crim.App. [Panel Op.] 1978).

■ Moreno contends that the questioning represents fundamental error and does not, therefore, require preservation. In cases where the error was not preserved, the harm to the defendant must be egregious, that is, so harmful that the defendant was denied a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984) (opinion on reh'g).

■ A trial judge is permitted to question a witness when seeking information only, to clarify a point, or to get the witness to repeat something that the judge could not hear. *See Brewer,* 572 S.W.2d at 721; *Ash v. State,* 420 S.W.2d 703, 705 (Tex.Crim.App.1967); *Hopperwood v. State,* 39 Tex.Crim. 15, 44 S.W. 841, 842 (1898). There are two dangers when the judge goes beyond this permissible questioning: (1) the judge may somehow convey his or her opinion of the case to the jury and ultimately influence the jury's decision (*Morrison v. State,* 845 S.W.2d 882, 886 n. 10 (Tex.Crim.App.1992)); and (2) the judge in the zeal of his or her active participation may become an advocate in the adversarial process and lose the neutral and detached role required for the fact finder and the judge.

There are numerous Texas cases dealing with the first danger. *Munoz v. State,* 485 S.W.2d 782, 784 (Tex.Crim.App.1972); *Ash,* 420 S.W.2d at 705; *Drake v. State,* 65 Tex. Crim. 282, 143 S.W. 1157, 1158 (1912); *Betancourt v. State,* 657 S.W.2d 451 (Tex. App.—Corpus Christi 1983, pet. ref'd). These cases are not applicable because there was no jury in the present case; thus, there was no danger of influencing the jury. *See Navarro v. State,* 477 S.W.2d 291, 292 (Tex. Crim.App.1972).

■ While some of the judge's questions may have been for the purpose of clarification, some questions constituted verbal jousting and a probing of Moreno's mind. The first series of questions could be characterized as prosecutorial in nature, seeking to find inconsistencies in Moreno's testimony. The second series of questions could be characterized as defense oriented, seeking a motive for the testimony of the children accusing Moreno, although toward the end of the questioning the judge appears to place doubt on the defense's theory of the motivation of the children's testimony.

A judge's questions are likely to be closely tied to his or her mental process. In the present case, however, the judge appears to be seeking facts for his fact-finding role, and the questions were within the bounds of what would have been allowed by the attorneys in the case. The answers elicited would also have been within the bounds of admissible

testimony. Further, the record does not re-
veal that the judge became so entangled as
an advocate that he could not at the end of
the proceeding make an objective finding of
fact in the case.

We find that the judge's questions do not
constitute egregious harm to Moreno. Thus,
we do not find fundamental error. This
point of error is overruled.

The judgment of the trial court is affirmed.