**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00489-CR
NO. 09-14-00490-CR
NO. 09-14-00491-CR
NO. 09-14-00492-CR
NO. 09-14-00493-CR
NO. 09-14-00494-CR

_____

**JUSTIN MAURICE HARRIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 13-10-11058 CR (Counts 1, 2, 4)**
**& 14-02-02044 CR (Counts 1, 3, 5)**

_____

**MEMORANDUM OPINION**

Appellant, Justin Maurice Harris (Harris), was indicted for six counts of aggravated robbery with a deadly weapon in Cause Number 13-10-11058-CR and for six counts of aggravated robbery with a deadly weapon in Cause Number 14-02-02044-CR, all first degree felony offenses. After his indictment but prior to

1

trial, the State moved to dismiss Counts 3, 5, and 6 from Cause Number 13-10-11058-CR, and Counts 2, 4, and 6 from Cause Number 14-02-02044-CR, leaving three counts in each case. Harris waived his right to a jury trial, and he pleaded guilty to all six remaining counts. Harris elected to have the trial court determine his punishment.

The trial court accepted his pleas and found Harris guilty. After a bench trial on punishment, the trial court assessed punishment at ninety-nine years of confinement in the Texas Department of Criminal Justice, Institutional Division on each count, with sentences to run concurrently. Harris filed notices of appeal. On appeal Harris raises only one appellate issue. He contends that the trial court erred, and thereby abused its discretion, in failing to grant Harris a mistrial after the State elicited testimony from a complaining witness concerning the specific punishment the complaint wanted the trial court to impose. We overrule his issue and affirm.

UNDERLYING FACTS

On October 4, 2013, and on October 11, 2013, the Montgomery County Sheriff's Department responded to 911 calls reporting the robbery of two different McDonald's fast food restaurant located on Woodlands Parkway. According to an eyewitness who called 911 on October 4th, the suspects fled and fired shots toward the eyewitness during the October 4th robbery. Spent shell casings were obtained

2

from the scene of the first robbery, along with bullet fragments from a wall. A sixteen-year-old employee who was working the front window testified at the punishment hearing that a male jumped through the drive-through window of the McDonald's restaurant, aimed a pistol at her, and told her to show him where the vault was.

During the punishment hearing, M.C. testified that he was working the drive-through at a different McDonald's restaurant on the evening of October 11, 2013, when a man wearing a brown hoodie "blasted" open the drive-through window and pointed a gun at M.C.'s face. Two accomplices entered through the window, and they demanded cash from the registers and the safe. M.C. stated that he thought he was going to die and that he prayed for mercy. M.C.'s manager took the assailants back to the safe, and M.C. fell to the ground because he thought he was going to have a heart attack and he was very scared.

Detective Schmitt investigated the October 11th incident and prepared an offense report and affidavit for a warrant of arrest. According to Schmitt's affidavit, at approximately 8:05 p.m. on October 11, 2013, two men entered the restaurant though the drive-through window, took money from the safe and registers in the store, and then exited and fled to a vehicle that was waiting. One of the men was described by witnesses as having a distinctive hairstyle and having

displayed a semi-automatic handgun that was silver and black with "an attachment under the barrel of the gun."

Detective Ansley with the Montgomery County Sheriff's Office testified at the punishment phase of the trial that he and other officers responded to the 911 call regarding the robbery that occurred on October 11, 2013. Upon responding to the call, Ansley said they learned that three men had entered the restaurant through the drive-through window, one of the men had a two-toned pistol, money was taken, and the men fled. According to Detective Ansley, Harris was the suspect who was carrying the gun during the October 11th robbery, and Harris hit one of the employees with the gun. Ansley's investigation included obtaining surveillance video from the two restaurants. Based on his review of the October 11th incident, Ansley and another detective determined that the October 11th robbery appeared related to the October 4th robbery, in which the means of entry was also through a drive-through window.

Harris was identified as a suspect and arrested by the Houston Police Department (HPD) on an unrelated charge, and HPD recovered a firearm from Harris that matched the description of the gun used in the robberies. The shell casings collected from the October 4th robbery investigation also matched the gun. One of the HPD officers notified the Montgomery County Sheriff that Harris had a

4

tattoo on his leg that matched the tattoo on the leg of one of the assailants as depicted in the surveillance video.

Officer Davis with the HPD, North Division Gang Unit, testified that Harris is a confirmed member of a violent gang based in Houston. The gang is known to have committed several aggravated robberies and aggravated assaults. Davis testified that Harris was a suspect in several violent robberies around the Houston area. According to Officer Davis, the members of the gang in question are active on social media sites. Officer Davis identified posts and photos from Harris' Facebook page and Twitter feed, wherein Harris identified himself using a gang name and posted information about his criminal behavior, his association with a gang, and pictures of himself with guns, money, and illegal drugs.

Harris complains on appeal specifically about a portion of the testimony provided by M.C., a complaining witness to the October 11th robbery. Harris contends that the trial court erred, and thereby abused its discretion, in failing to grant Harris a mistrial after the State elicited testimony from a complaining witness concerning the specific punishment the witness wanted the trial court to impose.

During the examination of the witness the following exchange occurred:

Q. [State's Attorney]: Does it make you feel safe or unsafe to know that [Harris] could be walking around the streets?

A. [Witness]: Unsafe.

Q. [State's Attorney]: What would make you feel safe?

[Defense Attorney]: Objection. This is an improper question, Your Honor. It's invading the province of the Court's position to sentence Mr. Harris.

THE COURT: I'll allow him to answer that question.

Q. [State's Attorney]: You can answer.

A. [Witness]: I would like to see life.

[Defense Attorney]: Objection, Your Honor. Move to strike and ask the Court to disregard. It's a specific question that he cannot -- he cannot tell the Court a specific sentence that he wishes the Court to apply.

THE COURT: Okay. Well, just rephrase your question, and we'll strike the answer.

. . .

[Defense counsel]: Your Honor, I have a motion to make. At this point I'm going to move for a mistrial based on the witness blurting out that he wants the Court to impose a life sentence, as if the jury was in the box. Once that bell has been rang [sic] you can't unring it. Based on that, Your Honor, and the improper answer -- the inappropriate answers the witness gave. I'm going to ask the Court to move for a mistrial.

THE COURT: Well, the Court --

[Defense counsel]: I'm going to move for a mistrial.

THE COURT: -- the Court is in a different position than the jury, and I can easily disregard it. So that's denied.

6

ANALYSIS

We review a trial court's admission of evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). During the punishment hearing in a non-capital criminal case, "evidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . the circumstances of the offense for which he is being tried . . . ." *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2014). Accordingly, the trial court may admit into evidence any evidence it "'deems relevant to sentencing.'" *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (emphasis omitted) (quoting Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)). The Legislature has expressly provided that evidence regarding the "circumstances of the offense" will be relevant. The definition of "relevant evidence" as applied under Rule 401 of the Texas Rules of Evidence "does not readily apply to Article 37.07. What is 'relevant' to the punishment determination is simply that which will assist the fact finder in deciding the appropriate sentence in a particular case." *Id.* (footnotes omitted); *see also Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009) ("Evidence is relevant if it helps the factfinder decide what sentence is appropriate for a particular defendant given the facts of the

7

case."). The Texas Court of Criminal Appeals has noted that during the punishment phase, a victim is in a unique position to describe what happened and to describe the impact the crime has had on the victim's life and family. *See Fryer v. State*, 68 S.W.3d 628, 630, 633 (Tex. Crim. App. 2002) (noting that "the crime victim" is knowledgeable about the offense and may be allowed "to speak on the issue of appropriate punishment."); *Garza v. State*, No. 09-14-00173-CR, 2014 WL 6984333, at *3 (Tex. App.—Beaumont Dec. 10, 2014, no pet.) (mem. op., not designated for publication). In his appellate brief, Harris cites to *Sattiewhite v. State*, 786 S.W.2d 271, 290 (Tex. Crim. App. 1989), for the assertion that "[a] non-victim witness should not be asked for his or her recommendation of a particular punishment." In *Sattiewhite*, the Court specifically addressed a punishment recommendation by experts, and not testimony by a crime victim. *See Garza*, 2014 WL 6984333, at *3; *see also Fryer*, 68 S.W.3d at 631 (explaining that *Sattiewhite* does not address the propriety of what may be considered in a PSI). *Sattiewhite* is inapposite to this case.

Harris elected to have his punishment tried to the court without a jury. Accordingly, because it was a bench trial, there was no risk that the question or the answer given by the victim-witness would sway or influence a jury. *See generally Navarro v. State*, 477 S.W.2d 291, 292 (Tex. Crim. App. 1972); *Moreno v. State*,

900 S.W.2d 357, 359-60 (Tex. App.—Texarkana 1995, no pet.). Nothing in the record before us indicates that the trial judge failed to remain impartial. *See Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978).

Moreover, even if the testimony in question was objectionable, the trial court did not err in failing to grant a mistrial. "[T]he question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Courts balance three factors in the harm analysis: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of punishment assessed absent the misconduct (likelihood of the same punishment being assessed). *Id.*

In this case, the victim's statement that he would feel safe if Harris received a life sentence was not so prejudicial that a mistrial was warranted. The overwhelming evidence showed that Harris robbed both restaurants, shot at customers, threatened employees and customers with a gun, caused one employee to believe his death was imminent, and that Harris was a member of a gang known to be involved in criminal and violent activity, and boasted about his gang-related activities on social media. It is understandable why a witness who was a victim of one of the robberies might testify he would feel safe if Harris were to receive a life

9

sentence, but such testimony is not so prejudicial in the context of this bench trial that it would warrant a mistrial. The evidence presented at the punishment phase, even without such statement, would support the punishment assessed by the trial court. Accordingly, we conclude that the trial court did not err in refusing to grant a mistrial.

We overrule Harris's sole issue and affirm his convictions.

AFFIRMED.

_____
LEANNE JOHNSON
Justice


Submitted on July 10, 2015
Opinion Delivered July 29, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.