

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00110-CR

_____

DEREK CLINTON WARD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 42433-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After Derek Clinton Ward entered an open plea of guilty to the state jail felony of theft of property valued at $1,500.00 or more but less than $20,000.00,[1] the trial court sentenced Ward to twenty-two months' incarceration. Ward has appealed, arguing that the trial court abandoned its duty to remain impartial in the sentencing process. We reject this argument and affirm the trial court's judgment and sentence.

**I.      Procedural Background**

Ward entered an open plea of guilty to the charged offense of theft April 9, 2015,[2] and returned for sentencing on May 21, 2015. It appears that although Ward had entered an open plea, there was something of an informal agreement between Ward and the State wherein the State would recommend that Ward would avoid incarceration if he appeared at the sentencing hearing with $3,750.00 in restitution. However, when Ward appeared at the sentencing hearing, he did not have the $3,750.00 in restitution; the only money proffered on his behalf was $1,000.00 brought by Ward's mother. After a hearing, the trial court sentenced Ward to twenty-two months' incarceration in a state jail facility.

---

[1]Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, sec. 31.03, 1973 Tex. Gen. Laws 883, 929–30 (amended 1975, 1977, 1981, 1983, 1985, 1987, 1989, 1991, 1993, 1995, 1997, 2001, 2003, 2007, 2009, 2011, 2015) (current version at TEX. PENAL CODE ANN. § 31.03 (West Supp. 2015)).

[2]The theft charge arose because Ward had taken an expensive welding machine from his then-employer. Initially, the employer was being reimbursed by withholding at least a portion of Ward's paycheck. However, the employer then indicated that Ward had also committed significant credit card abuse against the employer, and the informal repayment plan was abandoned. The credit card abuse case was not thereafter pursued due to problems with the loss of evidence, and Ward denied his culpability.

During the hearing on punishment, Ward related that he had become unemployed in the days immediately following the early April plea hearing, his job as an oil-field drilling hand having been eliminated during the downturn in the oil market. Ward (then thirty-six years old) testified that he elected to seek unemployment benefits rather than pursue employment. He went on to relate that he had had four back surgeries over the years and told the court about the physically demanding nature of his career choice. In doing so, Ward stated,

> [I]t was kind of nice to just let my back have a rest for a minute anyways. Working on a drilling rig when you're 36 years old and had as many spinal surgeries that I have had takes a toll on your body. I kind of looked at it as just taking a second off and giving my body a little rest.

Ward testified that in the weeks between losing his job and the sentencing hearing, he had applied for unemployment benefits, but that a few days before the hearing, he had been notified that he failed to include certain information with his application and that he was waiting for paperwork to be sent to him. He also said that although he had obtained job applications, he had not submitted them to prospective employers. He said he only took ibuprofen for his back pain, after successfully battling addiction to prescription pain medication. As for the job from which he had been laid off, he was "absolutely" eligible to be re-hired, and he already had "the paperwork" establishing that eligibility.

After the parties' examination of Ward drew to a close, the trial court asked him several questions. During this exchange, the trial court referred to the time intervening between Ward's plea hearing and the sentencing hearing as a "vacation." Although Ward did not object to that characterization at the time the trial court uttered it, Ward now objects to it on appeal. For the context in which this was said, we quote some of the trial court's statements as made during Ward's

3

sentencing hearing. After verifying the date that Ward had been terminated from his last job, the trial court said, "And so knowing that the State's recommendation is going to be two years state jail, you decide instead of finding a job to collect restitution, that you're going to take a vacation for a month and a half." Ward responded by protesting that the condition of his back had been the reason for not seeking employment.[3] The trial court then asked Ward why he should receive a suspended sentence. Ward answered, "Because I'll stick to the probation, complete the probation and give you no reason for feeling like I did anything unjust, sir."

Ward then called his mother (a loan officer for a mortgage company) to testify. She indicated that she was able and willing to pay $1,000.00 toward Ward's restitution at that time and that she could pay the remaining portion of the restitution on June 15, less than a month away.

After a short recess, the trial court accepted Ward's guilty plea and found him guilty as charged of theft of property valued at $1,500.00 or more, but less than $20,000.00. The court then described to Ward the factors taken into account in deciding the proper sentence:

> I have to decide if you deserve State Jail time, or do you deserve a shot at probation?

> When you pled guilty on April 9th, you knew what the State's recommendation was. You knew that your obligation under that recommendation was to come to Court today with $3,750 and the State would recommend a probated sentence.

> You personally came to Court with zero dollars.

---

[3]During this exchange, it was developed that Ward's driver's license had been re-activated after paying "some fees from a D.W.I." The trial court also asked Ward about a DWI charge from Shelby County, and Ward responded that that case had been dismissed. Ward admitted to the State that he had been charged with arson and assault/family violence (these charges arising from one incident with Ward's girlfriend), but claimed that the State had dropped the arson allegation while continuing prosecution of the assault case.

The factors I have to consider or send somebody to prison include their criminal history, obviously. If I was to consider just your criminal history, my decision is pretty easy. I would send you to prison, but I look at other factors, also.

I look at changes that they may have made, when the criminal history was. I look at several factors. Criminal history does vote against you. Your felony offense was long ago, so that helps you some.

I looked at the facts and circumstances of the offense.

I can't really consider much on the credit card abuse allegations, just because of the lack of proof before me. I do consider the statements you made to Investigator Mitchell and other factors.

Here's where it really comes down to my decision that I'm going to make today.

You pled guilty on April the 9th knowing that your part of the obligation was $3,750. You say you lost your job April 10th or 11th. Instead of going out and finding a new job whether it's flipping burgers at McDonald's for minimum wage or anything else, you testified that you wanted to take a month-and-a-half vacation to rest your back. It's not until recently, the last few days that you've even filed for unemployment. You come in here today and expect me to grant you probation. You expect me to grant you probation, and, say, well, I'm hoping that my mom's $1,000 is enough to bail me out. It's not this time.

I promise you if you had gone out and flipped burgers and showed me you were working, I would make a different decision than I'm about to make. But you didn't. No, rest my back. I'm going to see how much unemployment pays me instead of going out and working. That's the problem with today's society. We have a lot of people who are willing to see what the government is going to pay them instead of working.

It's not going to work here. 22 months State Jail. I will give you credit for time served.

Ward argues that the trial court abandoned its duty to remain a neutral and detached fact-finder; Ward complains of the trial court's use of the term "vacation" to describe the period between his being laid off and the sentencing hearing. Ward further points to the trial court's statement that he

5

would be unlikely to grant Ward much relief when the court was called upon to consider whether any of Ward's sentence would be reduced as a result of diligent participation in applicable programs while incarcerated.[4]

## II.    Failure to Preserve Argument

As previously mentioned, Ward lodged no objection to the trial court's use of the word "vacation" or any of the court's other statements at any time during the sentencing hearing (not while the trial court was questioning Ward, during the statement he gave in explaining his reasoning for the sentence that was announced, or during any other part of the hearing). In almost every circumstance, in order to preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2).

Although Ward attempts to invoke due process claims in his assertion that the trial court abandoned his role as judge for that of prosecutor, Ward offers no explanation or argument as to why we should address this unpreserved issue. In a somewhat similar situation, we observed that un-objected to "remarks and conduct of the [trial] court may not be subsequently challenged unless they are fundamentally erroneous." *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.) (citing *Brewer v, State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978)).

---

[4]This was apparently a reference to Article 42.12, Section 15(h)(5) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 15(h)(5) (West Supp. 2014).

In such a situation, we used the egregious harm standard from *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984) (op. on reh'g), to determine if fundamental error had occurred. The alleged error must be "so harmful that the defendant was denied a fair and impartial trial." *Moreno*, 900 S.W.2d at 359. If we were to look at Ward's brief in the most generous light possible, we might say that he has claimed fundamental (or plain) error, i.e., the kind that obviates the need to preserve it at the time of trial. An appellate court may, in criminal cases, "tak[e] 'notice of fundamental errors affecting substantial rights although they were not' brought to the attention of the [trial] court." *Boler v. State*, 177 S.W.3d 366, 373 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (quoting *Jasper v. State*, 61 S.W.3d 413, 420 (Tex. Crim. App. 2001)). "No objection is required when the error is so egregious that it rises to constitutional dimensions." *Id.* (citing *Jasper*, 61 S.W.3d at 421).

The trial court's comments were neither egregiously harmful nor did they operate to deny Ward a fair and impartial trial. Certainly, the comments did not rise to the status of a complaint of constitutional dimension. Read in context, the trial court was commenting on Ward's behavior between the time of the plea hearing and the sentencing hearing. When he took Ward's plea of guilty, the trial court admonished him of the full range of punishment, including a probated sentence with community supervision. Based on comments by the court and the State at the two hearings, it is clear that some informal agreement had been reached to the effect that if Ward brought the full restitution amount to the sentencing hearing, the State would recommend a probated sentence. However, if there was no such restitution, then there would be no such recommendation. At the plea hearing, the trial court warned Ward that it was not bound by any

7

plea negotiations the parties might have, but also told Ward, "[I]f you do bring the restitution, then that may put this in a different situation. But right now it is an open plea, so you have certain obligations you need to meet." When testimony developed at the sentencing hearing that Ward had worked most of his adult life in the oil-field business but made a conscious decision not to seek employment just days after the plea hearing (even after the discussions which had evidently taken place regarding leniency if Ward were to make restitution), the trial court was left to draw conclusions about Ward's suitability for community supervision and regarding Ward's commitment to fulfill potential obligations.

The sentencing hearing occurred before the trial court, so there was no jury that could have been confused or influenced by the court's characterization of how Ward spent his time between the hearings. *See Moreno*, 900 S.W.2d at 359. It also does not appear that the trial court abandoned its role and acted as an advocate for the State. *See id*. The trial court's decision process should not be hindered by a constraint on its ability to explain the rationale behind its decision. The fairness of the proceedings was not impugned. Even if error had occurred, it would not have been in the nature of plain or fundamental error. Accordingly, absent such error, it was incumbent upon Ward to preserve these issues for our review. We overrule Ward's point of error.

We affirm the trial court's judgment and sentence.


Bailey C. Moseley
Justice

Date Submitted: November 9, 2015
Date Decided: November 10, 2015

Do Not Publish

9