**Opinion filed October 31, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00338-CR

_____

## MARIO BERNAL, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-44,900**

## M E M O R A N D U M   O P I N I O N

Originally, Mario Bernal, Jr.[1] pleaded guilty to the offense of assault of a public servant. In accordance with the terms of a plea agreement, the trial court assessed Appellant's punishment at confinement for ten years and a fine of $2,000,

---

[1]We note that, in the indictment, Appellant's name is "Mario Bernal, Jr." However, the judgment revoking community supervision reflects that Appellant's name is "Mario Medrano Bernal."

suspended the imposition of the sentence, and placed Appellant on community supervision for five years. Subsequently, upon the State's motion, the trial court found that Appellant had violated certain terms and conditions of his community supervision. The trial court revoked Appellant's community supervision and imposed a sentence of confinement for five years. This appeal is from that revocation. We affirm.

Appellant raises two issues on appeal. First, Appellant contends that the trial court erred when it engaged in an adversarial examination of a witness. Second, Appellant challenges the sufficiency of the evidence to support the revocation.

We will first consider Appellant's complaint that the trial court assumed the role of an advocate for the State when it questioned Rebecca Kidd, a probation officer with the Ector County Adult Probation Department (ECAPD). The result was, Appellant argues, to deny him a fair and impartial hearing.

Kidd testified that she met with Appellant when he reported to the ECAPD on October 24, 2017. Kidd initiated a random drug test. Under the usual process, the probationer provides a urine sample "in one of our cups," and the sample is then tested. Kidd tested the urine sample provided by Appellant for "marijuana, meth, and cocaine." After Kidd tested the sample, Appellant did not admit to "using." Because the sample was not large enough to send to a lab, Kidd told Appellant that he would have to submit a larger sample before he could leave. When Appellant was ready to give the additional sample, Arturo Jurado, a male probation officer, accompanied him.

At some point during this later collection process, Jurado asked Kidd to come to the "UA room." When she went there, Kidd saw that Jurado was holding a test tube; the test tube was empty. She had never seen a test tube in her "UA

administering experience." Kidd testified that it was unusual for the test tube to be present and that it indicated to her that Appellant was "trying to falsify his drug test results."

The State then asked Kidd, "What about that test tube's presence made you think that?" Kidd responded, "Well, from where they told me they had found -- ." At that point, Appellant lodged a hearsay objection. It was then that the trial court began to question Kidd as follows:

> THE COURT: Ms. Kidd, nobody was there but you. You've got to tell us what you saw and observed. So first of all, describe the receptacle that is usually used to obtain a urine sample. Is it a tub? Is it a jar? What is it?

> THE WITNESS: It's just a cup with a lid.

> THE COURT: Okay. Describe it. Is it three gallons or is it -- can you tell me the approximate diameter of this cup?

> THE WITNESS: No, sir. It's about -- it's a cup that would hold about a cup of urine.

> THE COURT: Like a cup, a kitchen cup?

> THE WITNESS: Yes. No. A measuring cup.

> THE COURT: A measuring cup?

> THE WITNESS: Yes.

> THE COURT: Okay. So it's about that size?

> THE WITNESS: Yes, sir.

> THE COURT: And that's the normal receptacle that you see and is used in the probation office for this particular procedure; is that correct?

> THE WITNESS: Yes.

THE COURT: And so on this occasion, you've talked about initially a receptacle, and then you talked about a test tube. What is the difference between these two receptacles that you have described or mentioned?

THE WITNESS: The cup that we use for the UA samples is provided to the defendant, each defendant who submits a sample. The test tube that I observed was very small and narrow. It wouldn't have been able to hold much urine. And it had a lid, a stopper to that. There was a stopper that goes into the test tube.

THE COURT: And is it the policy or procedure, normal policy or procedure, of the adult probation office to ever use this type of receptacle?

THE WITNESS: No, sir. We don't even have those in the UA room.

THE COURT: All right. And so when you saw this, who was in possession of it?

THE WITNESS: The probation officer, Jurado.

THE COURT: [To the prosecutor] Go ahead.

At trial, Appellant did not object when the trial court questioned Kidd. The State maintains that Appellant has therefore waived the complaint. We agree. Generally, before a party may pursue a complaint on appeal, he must have presented the trial court with a timely request, objection, or motion; the grounds must be presented "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A); *Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

On appeal, Appellant responds that the trial court's actions were fundamentally erroneous and that, therefore, no objection was necessary to preserve the error. On this record, we cannot agree with Appellant.

4

In the absence of an objection, remarks or conduct of a trial court may not be challenged on appeal unless they are fundamentally erroneous. *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978); *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.). It is permissible for a trial court to seek facts for use in its role as a factfinder. *Moreno*, 900 S.W.2d at 359–60. A trial court may question a witness to clarify an issue before the court so long as it maintains an impartial attitude. *Brewer*, 572 S.W.2d at 721; *Munoz v. State*, 485 S.W.2d 782, 784 (Tex. Crim. App. 1972); *Navarro v. State*, 477 S.W.2d 291, 292 (Tex. Crim. App. 1972).

In *Moreno*, the Texarkana court noted that the questions asked by the trial court were within the bounds of what the attorneys would have been allowed to ask. Further, the answers would have been admissible testimony. *Moreno*, 900 S.W.2d at 359. As a further observation, the record in *Moreno* did not reveal that the trial court became so entangled as an advocate that it could not properly make objective findings. *Id.* at 360.

In this case, the trial court's questions to Kidd appeared to be ones to clarify, in view of the trial court's gatekeeping function, the admissibility of Kidd's testimony and to shed light upon the distinction between the standard container used by the probation office and the test tube that Jurado found in Appellant's possession. The questions asked by the trial court were ones that would have been proper if asked by the attorneys. The answers sought by the trial court were such that they would constitute admissible testimony. Finally, the record contains nothing to show that the trial court maintained anything other than an impartial attitude as it endeavored to clarify issues before the court; therefore, the trial court's conduct was permissible.

The actions of the trial court did not constitute error, fundamental or otherwise. We overrule Appellant's first issue on appeal.

In his second issue, Appellant contends that, because the State failed to prove any of the grounds for revocation, the trial court abused its discretion when it revoked Appellant's probation. We review a trial court's revocation order for an abuse of discretion. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. [Panel Op.] 1980). A trial court abuses its discretion when it enters an order by which it revokes a person's community supervision if the State has not proved, by a preponderance of the evidence, the grounds upon which the trial court ordered the revocation. *Caddell*, 605 S.W.2d at 277. Finally, evidence that is sufficient to establish a single violation will support revocation. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012).

Under the terms of his community supervision, Appellant was to commit no further criminal offenses and was to abstain from the use of drugs. In its motion to revoke Appellant's community supervision, the State alleged that Appellant falsified his drug test results and that he failed to abstain from the use of drugs.

After the trial court heard the motion to revoke community supervision, it revoked Appellant's community supervision. The trial court based its revocation order on its findings that Appellant (1) falsified drug test results, (2) consumed cocaine on or about October 21, 2017, and (3) consumed cocaine on or about December 2, 2017.

Jurado, as we have previously said, personally supervised Appellant as he provided the UA sample. Jurado testified that Appellant appeared nervous while trying to provide the drug test sample and that Appellant attempted to shift his body position to obscure himself from Jurado's view. Appellant's action seemed

6

suspicious to Jurado, and he asked Appellant to step back. At that point, Appellant dropped a green lid on the floor. Jurado told the trial court that Appellant had hidden something in his underwear. When confronted by Jurado, Appellant retrieved the plastic test tube that he had concealed and immediately dumped its contents into the toilet. Appellant told Jurado that the test tube contained water.

Jurado then asked Appellant about the reason for Appellant bringing the test tube to the drug test. According to Jurado, Appellant admitted to both using cocaine as alleged and "trying to deceive" the drug test. Although Appellant testified at the revocation hearing that he had made the admissions as to the use of cocaine, he testified that his admissions were not true at the time that he made them.

First, Appellant contends that the trial court abused its discretion when it revoked Appellant's community supervision based upon the allegation that Appellant falsified drug test results. Appellant argues that there was no clear testimony to establish that the test tube was a mechanism for deceiving the drug test and that the State produced no evidence showing that the test tube "at one point contained urine or a substance like urine." Rather, according to Appellant, the trial court relied solely on an assumption that the mere presence of the test tube indicated use for a nefarious purpose.

At a revocation hearing, the trial court is the trier of fact and the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Calhoun v. State*, 486 S.W.2d 302, 303–04 (Tex. Crim. App. 1972). The trial court may accept or reject all or any part of a witness's testimony, including that of a defendant. *Id.* Oral admissions to violations of the terms and conditions of community supervision made by a person to his probation officer are sufficient to revoke community supervision. *Herrera v. State*, 656 S.W.2d 148, 149 (Tex.

App.—Waco 1983, no pet.). As noted, Appellant admitted the violations to Jurado. Because the evidence is sufficient to show that Appellant engaged in the falsification of drug test results and that he used cocaine as alleged by the State, all in violation of the terms and conditions of his community supervision, the trial court did not abuse its discretion when it revoked Appellant's community supervision. We overrule Appellant's second issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE

October 31, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.