**AFFIRM; and Opinion Filed June 27, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-23-00694-CR

**ANDRE RENEE SHARP, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-22-75774**

## MEMORANDUM OPINION

Before Justices Smith, Miskel, and Breedlove
Opinion by Justice Smith

Appellant Andre Renee Sharp appeals the trial court's judgment convicting him of manslaughter. *See* TEX. PENAL CODE ANN. § 19.04. In four issues, appellant asserts that (1) the trial judge was biased, (2) the trial court violated his common law right to allocution, and (3) his sentence violates the Eight Amendment's prohibition against cruel and unusual punishment and his rights under the Texas Penal Code. We affirm.

## Background

The State charged appellant with manslaughter, alleging that he recklessly caused the death of C.G. by pointing and discharging a firearm in C.G.'s direction. Appellant judicially confessed to the offense, entered a guilty plea pursuant to an open plea agreement, and proceeded to trial before the court on punishment.

Daniela, C.G.'s sister, testified that C.G. was a playful eleven-year-old who loved to laugh and joke around. On May 5, 2022, Daniela and her boyfriend were visiting her parents' house. Daniela and her boyfriend were sitting next to each other at a table in the kitchen and C.G. was "behind [her] kind of by the stove." Daniela and C.G.'s siblings, Valeri, Selena, Jose, and Gerardo, also were at the house, along with appellant, Valeri's husband, and Alejandro, Selena's husband.

While Daniela was looking at her phone, appellant entered the kitchen with a gun in his hand. He pointed the gun at Daniela and pulled the trigger, pointed it at her boyfriend and pulled the trigger, and then pointed it at C.G. and pulled the trigger. The gun discharged on the third shot and hit C.G., who dropped to the floor. The police arrived, performed CPR, and took C.G. to the hospital, but he did not survive.

Daniela testified that she would never be able to erase the bloody images of C.G. from her mind. C.G. loved appellant, and they all thought of appellant as a big brother. Nevertheless, Daniella believed appellant intended to kill C.G. because

"[y]ou don't point a loaded weapon to somebody you claim you love. Especially pulling the trigger three times."

Appellant, who was thirty years old at the time of trial, admitted to killing C.G. by his recklessness. He testified that Jose had asked him to show his gun to some friends who were interested in buying or trading for it. There were colorful lights on in Jose's room, so appellant stepped into the hallway to remove five bullets from the gun. He dumped the bullets into his hand, thinking that he had all of them. He then pulled the trigger two or three times to make sure the gun was empty. He did not point the gun at anyone when he pulled the trigger. Appellant testified, and demonstrated, that he had been looking at the gun and not at Daniela or C.G.

Appellant testified that he and Valeri were married for two years and shared two children. He and C.G. were very close; C.G. was like a son to him. Appellant expressed remorse and had written a letter of apology to C.G.'s family. He had thoughts of committing suicide and would "give his life to take it back."

Appellant, however, believed that Daniela was embellishing what happened to get him in more trouble. He noted her testimony that she had been looking at her phone when he walked into the room. Further, he had "killed her brother so why wouldn't she say whatever she can to send me away?"

Appellant also testified that he had a prior misdemeanor deadly conduct case involving a gun. According to appellant, he "kind of flashed," but did not point, a gun at someone during a road rage incident. The gun was taken from him, but he

got another one a few years later. Appellant also testified that he had taken a gun safety class.

Following the State's cross-examination of appellant, the trial judge questioned appellant for several minutes. She confirmed appellant's testimony that he believed Daniela would lie about the incident. She also had appellant demonstrate how he was holding the gun, where he was standing, and where Jose's friends were at the time. She asked why he pulled the trigger in a room with people in it. He responded that, in hindsight, it would have been better to have been in a room by himself and also that pulling the trigger was not the best way to determine whether any bullets remained in the gun. The judge asked appellant what he had been doing prior to the accident, including whether he had been drinking or taking drugs.

The trial judge questioned appellant about his 2017 deferred adjudication community supervision for the criminal conduct charge, including what he had done to rehabilitate himself afterwards and to change his way of thinking. He testified that he had stayed away from guns, worked a warehouse job, and taken care of his oldest son. Appellant did not know why people "keep saying" that he pointed guns at them when he did not and agreed with the judge that he had "the worst luck." She asked what assurances he would give her that he would not point a gun at someone else, despite having done so even after being punished for it once before. He testified that he no longer wanted to be around guns and distinguished the earlier offense because he had been trying to defend himself. Finally, the judge asked how tall he

and C.G. were and requested an additional demonstration of how appellant had held the gun.

During closing arguments, defense counsel requested probation and the State requested a minimum of fifteen years. The trial court accepted appellant's guilty plea, found sufficient evidence to prove his guilt beyond a reasonable doubt, and sentenced him to eighteen years' confinement.

Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## Judicial Bias

In his first issue, appellant argues that the trial judge committed reversible error by failing to function as a neutral and detached arbiter. Specifically, he complains that the judge became an advocate by conducting a far more aggressive cross-examination than the State and failing to question Daniela about her testimony that appellant intended to kill "an 11-year-old child who was the nephew of [his] then wife." Appellant contends that the "tone, tenor, and subject matter of the trial court's cross-examination" demonstrates that appellant was deprived of his due process constitutional right to a neutral judicial arbiter who did not function as an adversarial advocate.

A defendant has a right to an absolutely impartial judge that "is not involved in the fray" at both the guilt-innocence and punishment phases of trial. *Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003); *Anguiano v State*, No. 05-21-

00685-CV, 2022 WL 2914024, at *2–3 (Tex. App.—Dallas July 25, 2022, no pet.) (mem. op., not designated for publication). Due process requires a neutral and detached judge. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). However, a neutral and detached judge is not synonymous with a silent observer. *Anguiano*, 2022 WL 2914024, at *3.

A trial judge is permitted to directly question witnesses, including a defendant, when seeking information to clarify a point. *Seely v. State*, No. 05-17-01149-CR, 2018 WL 5118647, at *1 (Tex. App.—Dallas Oct. 22, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978)). In doing so, the trial judge must not go beyond permissible questioning by (1) conveying her opinion of the case to the jury and ultimately influencing its decision, or (2) in the zeal of active participation, becoming an advocate and losing the neutral and detached role required for the factfinder and the judgment. *Id.* In a bench trial, the judge has more latitude to question witnesses to obtain information to assist in the factfinding process. *Id.* And although not favored, even extensive and adversarial questioning by a judge is permissible in a bench trial as long as the questions are relevant to the issues before the court and the court's impartiality is not affected. *Id.*

"Judicial remarks made during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Anguiano*, 2022 WL 2914024, at *3

(citing *Brumit*, 206 S.W.3d at 645). They may suggest improper bias if they reveal an opinion deriving from an extrajudicial source, but when no extrajudicial source is alleged, judicial remarks constitute grounds for reversal only if they reveal such a high degree of favoritism or antagonism as to make a fair judgment impossible. *Id.*; *see Gaal v. State*, 332 S.W.3d 448, 455 (Tex. Crim. App. 2011) (discussing reasons requiring recusal). "To constitute bias clearly on the record, the deep-seated antagonism must be apparent from the judicial remarks themselves without 'interpretation or expansion' by an appellate court." *Anguiano*, 2022 WL 2914024, at *3 (quoting *Gaal*, 332 S.W.3d at 455).

Absent a clear showing of bias, a trial judge's action will be presumed to have been correct. *Brumit*, 206 S.W.3d at 645; *see also Anguiano*, 2022 WL 2914024, at *3. We reverse on the basis of improper conduct or comments by the trial judge when an appellant presents proof (1) that judicial impropriety was in fact committed and (2) of probable prejudice. *Uribe v. State*, No. 05-18-00001-CR, 2019 WL 1292468, at *3 (Tex. App.—Dallas Mar. 20, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)).

Appellant concedes that he did not object to the trial judge's alleged advocacy, but contends, citing *Proenza v. State*, 541 S.W.3d 786 (Tex. Crim. App. 2017), that

–7–

he did not need to do so to preserve his complaint on appeal.[1]  However, even if we assume, without deciding, that he was not required to object to the judge's questions in order to raise his complaint on appeal, we resolve his complaint against him.  The trial in this case was to the bench, so there was no danger of the judge's questions influencing a jury.  *See Seely*, 2018 WL 5118647, at *1.  As a result, we look to whether, in the zeal of active participation, the judge became an advocate in the adversarial process and lost the neutral and detached role required for a judge.  *See id.*

The trial judge was the sole factfinder at the hearing and, as such, had latitude to question witnesses in order to inform its punishment decision.  The record shows that the judge questioned appellant in an effort to clarify his testimony about his efforts to empty the gun, the logistics of the shooting, what he was he was thinking at the time, and what he would do differently.  The judge also sought clarification regarding appellant's criticism of Daniela's testimony.  Finally, the judge inquired about appellant's earlier criminal conduct charge and the impact of his resulting community supervision.  The judge's questions were relevant to the punishment she would assess and sought clarification of matters already raised by defense counsel and the State.  *See, e.g.*, *Jones v. State*, No. 05–07–00219–CR, 2008 WL 2440290,

---

[1]  *Proenza* involved a trial judge making improper comments on the weight of the evidence in front of a jury in violation of article 38.05 of the Texas Code of Criminal Procedure.  541 S.W.3d at 790.  No violation of article 38.05 was alleged in this case; instead, it involves appellant's claim that the trial judge abandoned her neutral role when she questioned him about the shooting and his prior offense during the punishment hearing before the court.

–8–

at *2 (Tex. App.—Dallas June 18, 2008, pet. ref'd) (not designated for publication) (trial judge's questions seeking clarification from defendant about particulars of his admitted crime in punishment hearing following open plea were not error); *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana, 1995, no pet.) (in bench trial, judge may ask questions that advocate might ask in order to assist fact-finding process).

Appellant also complains of the judge's statement during sentencing that she was "not sure that physics works the way [appellant] would like [her] to believe it does" and notes nothing in the record indicated that the judge had any "such expertise regarding the science of physics." The record, however, reflects that the trial court was simply questioning the credibility of appellant's testimony regarding how he was holding the gun when he pulled the trigger and not revealing an actual opinion that the judge derived from an extrajudicial knowledge of physics.

Nor did the judge's tone and tenor, as reflected in the record, indicate that she became an advocate for the State. Some of her questioning was tough, especially when she elicited appellant's testimony denying that he had pointed a gun at anyone despite having been accused of doing so twice. But remarks that are critical or even hostile to a party ordinary do not support a bias challenge, *see Gaal*, 332 S.W.3d at 454, and nothing in the record reveals the type of "deep-seated favoritism or antagonism that would make a fair judgment impossible" and overcome the presumption that the judge's actions were properly motivated. *See Anguiano*, 2022

WL 2914024, at *3; *Brumit*, 206 S.W.3d at 646. Accordingly, we cannot conclude that the trial judge acted as an adversarial advocate for the State. We overrule appellant's first issue.

**Allocution**

In his second issue, appellant asserts that the trial court violated his common law right to allocution, which refers to "the opportunity for a defendant to present his personal plea to the Court in mitigation of punishment before sentence is imposed." *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (op. on reh'g); *Cooper v. State*, No. 05-22-01085-CR, 2024 WL 396603, at *6 (Tex. App.—Dallas Feb. 2, 2024, pet. ref'd) (mem. op., not designated for publication). Appellant acknowledges that the trial court complied with his statutory right of allocution.[2] The State responds that appellant failed to preserve his complaint for appellate review. We agree.

We have repeatedly held that a defendant must have timely objected to the trial court's denial of his right to allocution to preserve his complaint for appeal. *See Hunter v. State*, No. 05-23-01019, 2024 WL 2972026, at *3 (Tex. App.—Dallas June 13, 2024, no pet. h.); *Albiar v. State*, Nos. 05-22-00558-CR, 05-22-00559-CR, 2023 WL 5814273, at *2 (Tex. App.—Dallas Sept. 8, 2023, no pet.) (mem. op., not designated for publication) (collecting cases). In pronouncing appellant's sentence

---

[2] *See* TEX. CODE CRIM. PROC. art. 42.07.

after hearing the evidence and argument of counsel, the trial court asked defense counsel if there was any legal reason why sentence should not be imposed. Defense counsel responded, "No, Your Honor." Defense counsel did not ask to be heard on any other matter or make any further argument to the court. Therefore, appellant did not preserve his complaint that the trial court violated his common law right to allocution. *See* TEX. R. APP. P. 33.1(a) (to present a complaint for appellate review, the record must show that the complaint was timely made to the trial court by request, objection, or motion and that the trial court adversely ruled or refused to rule on the complaint); *Cooper*, 2024 WL 396603, at *6. We overrule his second issue.

## Punishment

In his third issue, appellant complains that the trial court imposed a grossly disproportionate punishment, thereby violated his rights under the Eighth Amendment's prohibition of cruel and unusual punishment. He acknowledges the serious nature of his offense, but argues that C.G.'s death was a tragic accident, he is a productive, contributing member of society, and his criminal history is limited to a single misdemeanor deferred adjudication case. In his fourth issue, appellant asserts that his sentence of eighteen years' confinement violated the stated objectives of the Texas Penal Code because it failed to promote the goal of rehabilitation.

Subject to two narrow exceptions for absolute rights or waivable-only rights not at issue in this case, the record must show that an appellant made a timely

–11–

request, objection, or motion to the trial court for error to be preserved on appeal. *See* TEX. R. APP. P. 33.1(a)(1); *Garza v. State*, 435 S.W.3d 258, 260–61 (Tex. Crim. App. 2014). The record shows that appellant's punishment was assessed at eighteen years' confinement, which was within the range of punishment for the charged offense. *See* TEX. PENAL CODE ANN. §§ 12.33(a), (b), 19.04. It also shows that he did not object, either when his sentence was announced or in a post-conviction motion, that the sentence was grossly disproportionate or failed to accomplish the goals set forth in the penal code. Accordingly, appellant has not preserved his complaints for appellate review. *See Hunter*, 2024 WL 2972026, at *4; *Sims v. State*, No. 05-18-00572-CR, 2019 WL 2266547, at *3 (Tex. App.—Dallas May 28, 2019, no pet.) (mem. op., not designated for publication) (argument that sentence was grossly disproportionate in violation of constitution waived by failure to object in trial court); *Albiar*, 2023 WL 5814273, at *2 (listing cases in which this Court has consistently rejected argument that sentence contravened objectives of penal code when no such argument was raised in trial court). We overrule appellant's third and fourth issues.

**Conclusion**

We affirm the trial court's judgment.

/Craig Smith/

CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230694F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANDRE RENEE SHARP, Appellant

No. 05-23-00694-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-22-75774.
Opinion delivered by Justice Smith. Justices Miskel and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of June, 2024.