PD-1573-15

PD-1573-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/4/2015 12:56:15 PM
Accepted 12/4/2015 1:45:27 PM
ABEL ACOSTA
CLERK

NO. _____

IN THE

COURT OF CRIMINAL  APPEALS  OF TEXAS

_____

DEREK CLINTON WARD, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

_____

On Review from Cause No. 06-15-00110-CR
In the Court of Appeals For the Sixth District at Texarkana

_____

On appeal from Cause No. 42,433-B
In the 124th District Court
of Gregg County, Texas
Honorable Alfonso Charles, Judge Presiding

FILED IN
COURT OF CRIMINAL APPEALS

December 4, 2015

ABEL ACOSTA, CLERK

HOUGH-LEWIS ("LEW") DUNN
ATTORNEY AT LAW
P.O. BOX 2226
LONGVIEW, TX 75606
Tel. 903-757-6711
Fax 903-757-6712
Email: dunn@texramp.net
Counsel for Appellant

*APPELLANT RESPECTFULLY REQUESTS ORAL ARGUMENT*

**IDENTITIES OF JUDGE, PARTIES, AND COUNSEL**

Pursuant to Rule 68.4(a), Texas Rules of Appellate Procedure, a complete list of the names of the trial judge, all parties, and counsel are as follows:

| | |
|---|---|
| *Trial Judge*: | Honorable Alfonso Charles<br>Presiding Judge, 124th District Court<br>Gregg County, Texas |
| *Attorneys for Appellant:* | Hough-Lewis ("Lew") Dunn<br>Counsel on Petition for Discretionary Review<br>P.O. Box 2226<br>Longview, TX 75606 |
| | Tim Cone<br>Counsel on Direct Appeal<br>P.O. Box 413<br>Gilmer, TX 75644 |
| | Lance R. Larison<br>Trial Counsel<br>Molly Larison<br>Pre-Trial Counsel<br>P.O. Box 232<br>Longview, TX 75606 |
| *Attorneys for the State:* | Carl Dorrough, Criminal District Attorney<br>101 East Methvin, Suite 333<br>Longview, TX 75606 |
| | Christopher A. Parker<br>Assistant Criminal District Attorney<br>Trial Counsel |
| | Zan Colson Brown<br>Assistant Criminal District Attorney<br>State's Counsel on Appeal |

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... iii

INDEX OF AUTHORITIES ................................................................. v

STATEMENT REGARDING ORAL ARGUMENT .......................................... vii

STATEMENT OF THE CASE..................................................................... 1

STATEMENT OF PROCEDURAL HISTORY................................................. 2

QUESTIONS PRESENTED ...................................................................... 2

## *FIRST QUESTION PRESENTED FOR REVIEW*

DID THE COURT OF APPEALS ERR IN FINDING NOTHING FUNDAMENTALLY ERROREOUS IN THE CONDUCT OF THE TRIAL COURT UNDER *ALMANZA*, WHEN THE RECORD SHOWED THAT THE TRIAL COURT ADOPTED THE STATE'S POSITION THAT ECONOMIC CONSIDERATIONS CONTROLLED THE OUTCOME OF SENTENCING?

## *SECOND QUESTION PRESENTED FOR REVIEW*

DID THE COURT OF APPEALS ERR IN FAILING TO FIND THAT THE TRIAL COURT HAD, IN ADOPTING THE STATE'S POSITION THAT ECONOMIC CONSIDERATIONS CONTROLLED THE OUTCOME OF SENTENCING, ABROGATED THE FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CONCERNS FOUND IN *BEARDEN V. GEORGIA*?

## *Reason for Granting Review*

In reaching its decision, the Court of Appeals failed to follow the precedent of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1986 (op. on reh'g), and it ignored principles of Fourteenth Amendment Due Process and Equal Protection of the Law that underlie the ability to pay restitution, found in *Bearden v. Georgia*, 461 U.S. 660 (1983).

ARGUMENT AND AUTHORITIES.................................................... 3

    FACTS ……………………………………………………………………….. 4

    LEGAL ANALYSIS ………………………………………………………….. 9

PRAYER FOR RELIEF.................................................................. 19

CERTIFICATE OF SERVICE............................................................ 20

CERTIFICATE OF COMPLIANCE ……………………………………………… 20

 APPENDIX

*Ward v. State*, No. 06-15-00110-CR (Tex. App. – Texarkana, delivered November 10, 2015)(Mem. Op.)(not designated for publication)

# INDEX OF AUTHORITIES

## CASES

*Almanza v. State,* 686 S.W.2d 157 ……………………………………..    3, 4, 10, 11
     (Tex. Crim. App. 1984)(op. on reh'g)

*Barton v. State,* 21 S.W.3d 287 (Tex. Crim. App. 2000) …………………….…… 17

*Bearden v. Georgia*, 461 U.S. 660 (1983) ……………….……    3, 4, 12, 13, 14, 15

*Griffin v. Illinois*, 351 U.S. 12 (1956) ……………………………………………..    13

*Lemos v. State*, 27 S.W.3d 42 (Tex. App. – San Antonio 2000, pet. ref'd) ..    17

*Lively v. State*, 338 S.W.3d 140 (Tex. App. – Texarkana 2011, no pet.)    14

*Moreno v. State*, 900 S.W.2d 357 (Tex. App. – Texarkana 1995, no pet.)    10

*Miller v. State*, 343 S.W.3d 499 (Tex. App. – Waco 2011, pet. ref'd) ……    17

*Tate v. Short*, 401 U.S. 395 (1971) …………………………………………….    13

*Williams v. Illinois*, 399 U.S. 235 (1970) ……………………………………..    13

## OPINIONS

JM-917 (1988) ………………………………………………………………………    14

## STATUTES

U. S. CONSTITUTION

Fourteenth Amendment Due Process ……………    3, 4, 12, 13, 14, 15, 16, 18

STATUTES (CONT'D)

U. S. CONSTITUTION

Fourteenth Amendment Equal Protection of the Law ….   3, 4, 12, 13, 14, 15, 16, 18

TEX. CONST.

ART. 1, §19 ……………………………………………………………………………………    9

ART. 1, §30(b)(4) ……………………………………………………………………………    17

CODES

ART. 42.037(k), TEX. CODE CRIM. P. ……………………………………………….    17

ART. 42.12 §21(c), TEX. CODE CRIM. P. ………………………………………………    13

TEX. LABOR CODE, §201 *et. seq.* ………………………………………………    11

TEX. PENAL CODE § 31.03(e)(4)(A) ……………………………………………………    1

RULES

TEX. R. APP. P. 33.1(a)(1) and (2) ………………………………………………..    9

OTHER

MAGNA CARTA, Article 40 (1215) ……………………………………………………    14

*STATEMENT REGARDING ORAL ARGUMENT*

The opinion of the Court of Appeals impermissibly narrows the precedent of *Almanza* on the concept of what is fundamentally erroneous. Moreover, the ability to pay restitution, rooted in concepts of Due Process and Equal Protection, implicates fundamental rights that cannot be disregarded and set aside when the court of appeals is called upon to review the actions of the trial court in assessing punishment. The opinion of the court of appeals sets a questionable precedent on the issues of judicial impartiality and of restitution in sentencing, something that affects victims and defendants statewide.

Oral argument will help delineate those concerns.

NO. _____

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS
_____

DEREK CLINTON WARD, Appellant

V.

THE STATE OF TEXAS, Appellee
_____

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
_____

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

NOW COMES Derek Clinton Ward, Appellant in this matter, by and through his attorney of record, Hough-Lewis Dunn, and pursuant to the provisions of Texas Rules of Appellate Procedure 66, *et seq,* urges this Court to grant discretionary review, and in support will show as follows:

### STATEMENT OF THE CASE

Appellant was indicted for the offense of theft of property, valued at an amount not less than $1,500 but no more than $20,000, namely, a welding machine, a state jail felony. TEX. PENAL CODE §31.03(e)(4)(A) (West 2012) (CR 4). Appellant waived jury trial and entered a plea of

1

"guilty" to the trial court on or about April 9, 2015 (RR 4: 4), and thereafter on May 21, 2015, was sentenced to 22 months in a state jail facility (RR 5: 41)(CR 50). Appellant timely filed his *pro se* "Notice of Appeal" on or about June 10, 2015 (CR 37).

## *STATEMENT OF PROCEDURAL HISTORY*

Petitioner perfected appeal to the Sixth Court of Appeals in Texarkana. The Sixth Court of Appeals affirmed the judgment of the trial court, issuing its Memorandum Opinion in *Ward v. State*, No. 06-15-00110-CR, (Tex. App. – Texarkana, delivered November 10, 2015) (Mem. Op.) (not designated for publication). No Motion for Rehearing was filed. From that affirmance Appellant now brings this Petition for Discretionary Review.

## GROUNDS FOR REVIEW

## QUESTIONS PRESENTED

### *FIRST QUESTION PRESENTED FOR REVIEW*

DID THE COURT OF APPEALS ERR IN FINDING NOTHING FUNDAMENTALLY ERRONEOUS IN THE CONDUCT OF THE TRIAL COURT UNDER *ALMANZA*, WHEN THE RECORD SHOWED THAT THE TRIAL COURT ADOPTED THE STATE'S POSITION THAT ECONOMIC CONSIDERATIONS CONTROLLED THE OUTCOME OF SENTENCING?

*SECOND QUESTION PRESENTED FOR REVIEW*

DID THE COURT OF APPEALS ERR IN FAILING TO FIND THAT THE TRIAL COURT HAD, IN ADOPTING THE STATE'S POSITION THAT ECONOMIC CONSIDERATIONS CONTROLLED THE OUTCOME OF SENTENCING, ABROGATED THE FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CONCERNS FOUND IN *BEARDEN V. GEORGIA*?

*Reason for Granting Review*

In reaching its decision, the Court of Appeals failed to follow the precedent of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1986 (op. on reh'g), and it ignored principles of Fourteenth Amendment Due Process and Equal Protection of the Law that underlie the ability to pay restitution, found in *Bearden v. Georgia*, 461 U.S. 660 (1983).

# ARGUMENT AND AUTHORITIES

## QUESTIONS PRESENTED FOR REVIEW

### FIRST QUESTION PRESENTED FOR REVIEW

DID THE COURT OF APPEALS ERR IN FINDING NOTHING FUNDAMENTALLY ERROREOUS IN THE CONDUCT OF THE TRIAL COURT UNDER *ALMANZA*, WHEN THE RECORD SHOWED THAT THE TRIAL COURT ADOPTED THE STATE'S POSITION THAT ECONOMIC CONSIDERATIONS CONTROLLED THE OUTCOME OF SENTENCING?

DID THE COURT OF APPEALS ERR IN FAILING TO FIND THAT THE TRIAL COURT HAD, IN ADOPTING THE STATE'S POSITION THAT ECONOMIC CONSIDERATIONS CONTROLLED THE OUTCOME OF SENTENCING, ABROGATED THE FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CONCERNS FOUND IN *BEARDEN V. GEORGIA*?

*Reason for Granting Review*

In reaching its decision, the Court of Appeals failed to follow the precedent of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1986 (op. on reh'g), and it ignored principles of Fourteenth Amendment Due Process and Equal Protection of the Law that underlie the ability to pay restitution, found in *Bearden v. Georgia*, 461 U.S. 660 (1983).

*[Appellant will address both the First and Second Questions here.]*

The Court of Appeals opinion sets out the facts in its opinion. *Ward v. State*, No. 06-15-00110-CR, (Tex. App. – Texarkana, delivered November 10, 2015) (Mem. Op.) (not designated for publication).

*FACTS*

Briefly summarizing the record, however: Appellant pleaded guilty to the indictment of theft of a welding machine (RR 4: 4). The controversy was confirmed at the sentencing hearing where the victim (Appellant's former employer), one Newberry (RR 5: 5), testified about alleged (but unsubstantiated) charges to credit cards (RR 5: 6), and

4

Appellant's taking and pawning of a welding machine (RR 5: 7-8); also how Newberry withheld Appellant's paycheck in connection with his allegations about the credit card abuse (RR 5: 12).

Appellant testified that, though he had worked for nine months, he had recently been laid off with the turn-down in the oil industry (RR 5, 13-14); had filed for unemployment (RR 5: 14-15); had dependents he was trying to support (RR 5: 15-16); had been through some physical as well as mental difficulties since the date of the offense back in September 2012 (RR 5: 18-19). Appellant stated that he took the welding machine because he was "sore about" how Newberry had withheld his wages in the controversy over the alleged credit card charges, something he denied doing (RR 5: 22-23). Appellant, with the help of his mother, had brought $1,000 to court that day to be paid toward restitution (RR 5: 27). Under questioning from the trial court, Appellant stated that he had lost his job on April 11, 2015, about 40 days before he came to that session of court for sentencing on May 21 , but had filed for unemployment benefits (RR 5: 28). Age 36, he had had four spinal surgeries in his young life (RR 5: 17).

At that point the trial court questioned Appellant, and had this comment about Appellant's filing for unemployment: "And so knowing that the State's recommendation is going to be two years  State Jail, you decide instead of finding a job to collect restitution, that you're going to take a vacation for a month and a half" (RR 5:  28).

Finally, Mrs. Linda Lee (Appellant's mother) testified (RR 5: 31 ff). She spoke about the efforts Appellant had made to turn his life around and accept his responsibilities to his dependents and to try to come up with restitution, but that his chances for employment in the oil industry had been affected by the downturn; that she had, through her employment, the expectation of having the entire amount of restitution available within the next month (RR 5: 32-33).

At instances during the proceedings, the State made statements that tied its recommendation for probation to a specific amount of money to be paid in restitution. There is this, from the hearing on the guilty plea of April 9, 2015, in anticipation of the date set for sentencing:

STATE:   And, Your Honor, in this case, Mr. Larison and I have spoken, as well as with the victim, Mr. Newberry, there's an expectation that a certain figure will be brought to court that date. And that is the basis of what our agreement or future agreement is based upon, Your Honor.

(RR 4: 12)

See also: RR 5: 9, where State's counsel, in questioning Newberry says: "…we would either accept the restitution and reach a plea agreement for probation or the State was going to ask for two years in State Jail."

Then in cross-examining Appellant (RR 5: 24), there was this exchange with State's counsel:

STATE:   What did you understand the State was going to do at this hearing?

APPELLANT:   That the sentence would be given.

STATE:   If you brought the money, the restitution owed on the case, the State was going to agree to probation; is that correct?

APPELLANT:   Yes, sir.

STATE:   If you didn't bring the money, what was the State going to recommend?

APPELLANT:   Well, the Judge – from my understanding, the Judge would then have it either which way, probation or –

STATE: You knew the State would be asking for prison, right? I don't know if you remember it or not?

APPELLANT: I don't.

STATE: You understood that was definitely what you were facing, what you were risking? You were facing jail time if you didn't bring the restitution, you know that, right?

APPELLANT: I knew that was a possibility.

At the guilty plea hearing the trial court at first stated that it was not bound by any such agreements, but then went on to state: "Now, if you do bring the restitution, then that may put this in a different situation." (RR 4: 13).

At the sentencing hearing, the trial court stated (referring to the guilty plea): "The plea was based on some possibilities including restitution where the State would have a different offer." (RR 5: 4).

When it came time to assess a sentence, the trial court stated: "When you pled guilty on April the 9th, you knew what the State's recommendation was. You knew that your obligation under that recommendation was to come to Court today with $3,750 and the State would recommend a probated sentence. You personally came to Court with zero dollars." (RR 5: 39). The trial court went on to say: "I promise

you if you had gone out and flipped burgers and showed me you were working, I would make a different decision than I'm about to make. But you didn't. No, rest my back. I'm going to see how much unemployment pays me instead of going out and working. That's the problem with today's society. We have a lot of people who are willing to see what the government is going to pay them instead of working" (RR 5: 41).

*LEGAL ANALYSIS*

On appeal Appellant's sole point was this: that the trial court did not act as a neutral and detached fact finder, taking on the role of prosecutor, thereby violating Fourteenth Amendment Due Process and Texas Due Course of the Law, TEX. CONST. ART. 1 §19.

The Court of Appeals reached two conclusions essential to its determination of the appeal:

First, it determined that the issue raised by Appellant was not preserved by objection and a ruling at trial , as required by TEX. R. APP. P. 33.1(a)(1) and (2) (Opinion, p. 6).

Second, it held that the conduct of the trial court was not such that it would have qualified as "fundamentally erroneous" under the standards

9

found in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)(op. on reh'g) (Opinion, pp.6-7). Elaborating further, the Court of Appeals cited to *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App. – Texarkana 1995, no pet.) for the proposition that the lack of an objection (and ruling thereon) is not necessary for appellate review if the alleged conduct of the trial court was "so harmful that the defendant was denied a fair trial" (Opinion, p. 7). The Court of Appeals, using that as a standard, found that the comments of the trial court in the case at bar "were neither egregiously harmful nor did they operate to deny Ward a fair trial" (*id.*). After a review of the evidence from the sentencing hearing, the Court of Appeals concluded that the trial court did not abandon its role and act as advocate for the State (Opinion, p. 8).

However, the Court of Appeals failed to delve into the overriding concerns, both from the State and also the trial court, with the economic considerations that dominated the direction and outcome of the sentencing hearing. Indeed, the trial court did, in fact, abandon its neutral and detached role, and justified its sentencing on the very economic posture that the State had made its hallmark for either probation or jail time.

Contrary to allowable conduct of filing for unemployment benefits, something sanctioned and encouraged under State law (*see*, TEX. LABOR CODE, 201 *et seq*.), the trial court viewed that as somehow akin to "taking a vacation", concluding with the following remark: "That's the problem with today's society. We have a lot of people who are willing to see what the government is going to pay them instead of working." The sum total of that sort of rhetoric and its disregard for a legitimate resource for those who are unemployed, the orientation of the trial court adopting the State's stance on how the sentencing turned on the question of economics: in its totality it qualifies as *Almanza* fundamental error.

Both the State and the trial court based the possibility of probation in this case on economic considerations, without regard to the financial circumstances of Appellant. Each of them said that probation was dependent on restitution being paid by Appellant. The trial court denounced Appellant for filing for unemployment compensation, though such a step is certainly approved of by the Legislature as an appropriate remedy for joblessness by the statutes of our State. *See*, TEX. LABOR CODE, 201 *et seq*. By so doing, fundamental

Fourteenth Amendment Due Process and Equal Protection considerations were ignored, resulting in fundamental error. That error was compounded by the fact that nowhere in Newberry's testimony did he offer a figure on the amount of restitution, as promised earlier by the State.

Economic considerations underlie the process of determining whether or not a defendant has complied with the terms of probation. The lead case is *Bearden v. Georgia*, 461 U.S. 660 (1983). There the U.S. Supreme Court held that, "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Id.*, at 667-68. And then further:

"Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.*, at 672-73.

In *Bearden v. Georgia*, the Supreme Court was not writing on a blank slate on the issue of how economic considerations can impinge upon the Due Process and Equal Protection rights of a defendant. Precedents included *Williams v. Illinois*, 399 U.S. 235 (1970) (holding: State cannot subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely because they are too poor to pay the fine) and *Tate v. Short*, 401 U.S. 395 (1971) (holding: State cannot convert a fine imposed fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full). *See also, Griffin v. Illinois*, 351 U.S. 12 (1956) (holding: State could not deny appellate review to those who were indigent but grant it to those who could afford a trial transcript). Writing for the majority, Justice O'Connor found that "Due Process and equal protection principles converge in the Court's analysis in these cases" *Bearden v. Georgia*, at 665.

Those constitutional principles are codified in ART. 42.12 §21(c), TEX. CODE CRIM. P., where probation revocation is prohibited for failure to pay money, and where the burden of proof is on the State to prove the ability to pay, coupled with a failure to pay.

It has been held that even a plea of "true" to an allegation for

revocation does not waive a *Bearden v. Georgia* violation. *See, Lively v. State*, 338 S.W.3d 140, 145 (Tex. App. – Texarkana 2011, no pet.).

Appellant contends that the Court of Appeals committed a two-fold failure: first it failed to see that the trial court did abandon its neutral position when it made economic considerations the overriding basis upon which it determined sentence and, second, it failed to recognize a nonwaivable right at issue: namely, that a person's freedom is not dependent upon whether or not a person can pay money. That is the core consideration in *Bearden v. Georgia*, embedded in Fourteenth Amendment Due Process considerations, as well as in the Equal Protection Clause. *Id.,* at 665. Going back for centuries, there is a principle of English law found in MAGNA CARTA, Article 40 (2015): "To no one will we sell, to no one deny or delay right or justice."[1] In an opinion holding unconstitutional a statute that imposed a $10 fee for the dismissal of a charge of failure to maintain proof of financial responsibility for those who were innocent of the offense, Attorney General Mattox cited to MAGNA CARTA, Article 40, saying that the statute was "contrary to our notions of due process and the law of the land since Magna Carta." TEX. ATT'Y GEN. OP. NO. JM-917 (1988).

---

[1] "Nulli vendemus, nulli negabimus aut differemus rectum aut justiciam."

Admittedly, *Bearden v. Georgia* was a case that focused on probation revocation. The case held that, in determining a defendant's <u>initial</u> sentence, the trial court is not bound by the economic status of a defendant and may impose the maximum penalty. *Id.,* at 670. However, in the case at bar, both the trial court and the State made the payment (and lack of payment) of restitution, as well as the legitimate seeking of unemployment benefits (both economic factors) the determining consideration in that initial sentence of imprisonment, rather than probation.

Therein lies the constitutional issue before this Honorable Court, the issue that was overlooked and disregarded by the Court of Appeals.

As a corollary to the Fourteenth Amendment Due Process and Equal Protection of the Law issues raised in *Bearden v. Georgia*, there is this additional fundamental concern at work in the case at bar:

Where the trial court accepts the State's position on punishment, deciding to withhold consideration of probation from a defendant because he has not brought with him funds that the said court has deemed sufficient for restitution, and when it disparages and holds against a defendant his reliance upon legitimate economic support approved by State law, then

the decision has run afoul of Fourteenth Amendment Due Process and Equal Protection of the Law. Punishment no longer is meted out depending on the facts of the offense, but on the economic ability of the offender to pay money. That certainly runs counter to Fourteenth Amendment Equal Protection considerations, since an offender who can pay the restitution gets probation, but one who does not -- one who is compelled to rely upon State assistance to live -- gets incarcerated. It has all the earmarks of dispensing justice according to the economic circumstances of the offender.

Compounding that error was the fact that, nowhere in the record during the hearing on punishment did Newberry testify as to the value of the welding machine. The trial court referred to the sum of $3,750, but that is nowhere in the record from the sentencing hearing, as promised by the State at the conclusion of the guilty plea (RR 4: 12). The figure of $3,250 is mentioned in a police report as the value of the welding machine (RR 6: 7); and in that same report the figure of $250.00 is placed on a pair of cables (RR 6: 7). However, at the low end of valuation, the machine was pawned for $425.00 (RR 6: 9); on that same page Newberry gave a value on the machine of $3,500. *Id.* Then in another report (Call Sheet Report dated

12/29/2012) Newberry reported (on the high end of valuation) that he had "about 6-10,000 dollars worth of equipment" stolen (RR 6: 14).

ART. 42.037(k), TEX. CODE CRIM. P., places the burden of proving the amount of restitution on the State. The statute says, in relevant part: "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the prosecuting attorney." The Judgment recites an amount of restitution as $3,750, payable to the victim Newberry, but does not say how or when that amount must be paid (CR 50-51). *See, Miller v. State*, 343 S.W.3d 499, 502 (Tex. App. – Waco 2011, pet. ref'd), where the reviewing court held that the amount of restitution must be just and supported by a factual basis within the record. The State did not elicit testimony from Newberry at the sentencing hearing. The evidence from the State's exhibits was, at best, ambiguous. S*ee also, Barton v. State,* 21 S.W.3d 287 (Tex. Crim. App. 2000); *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App. – San Antonio 2000, pet. ref'd).[2]

---

[2] Victim's right to restitution:  *see*, TEX. CONST. ART. 1, §30(b)(4).

Appellant, with the assistance of his mother, had brought some money to court: $1,000. In the opinion of the State and of the trial court, it fell short. So the principle at work was this: either bring all the money or go to prison.

The Court of Appeals failed to grasp the fundamental, nonwaivable, issue at work in the appeal in its consideration of whether the trial court had erred in its determination of punishment, namely, that the trial court departed from its neutral and detached role, adopting instead the position of the State toward punishment, thereby imposing an unconstitutional burden of financial means upon Appellant in deciding his sentence. That burden ran afoul of Fourteenth Amendment Due Process and Equal Protection of the Law.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Derek Clinton Ward, Appellant, prays that the Honorable Court of Criminal Appeals will grant discretionary review and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' judgment and remand for further proceedings consistent with the Court's opinion.

Respectfully submitted,

/S/ Hough-Lewis Dunn
HOUGH-LEWIS ("LEW") DUNN
TEXAS STATE BAR NO. 02644600
201 E. METHVIN STREET, SUITE 102
P.O. BOX 2226
LONGVIEW, TX 75606
903-757-6711
903-757-6712
dunn@texramp.net

ATTORNEY FOR APPELLANT

**CERTIFICATE OF COMPLIANCE**

This petition complies with the typeface requirements of TEX. R. APP. P. 9.4(e), because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document complies with the word-count limitations of TEX. R. APP. P. 9.4(i) because it contains 3,702 words, excluding the parts exempted by TEX. R. APP. P. 9.4(i)(1).

/S/ Hough-Lewis Dunn

**CERTIFICATE OF SERVICE**

I certify the foregoing Petition for Discretionary Review was served upon the State of Texas by sending a true and correct copy to the Criminal District Attorney of Gregg County and the State Prosecuting Attorney via mail to: Hon. Zan Colson Brown, Assistant Criminal District Attorney for Gregg County, 101 E. Methvin St. Suite 333, Longview, TX 75601, and Hon. Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, TX 78711-3046 on the 4th day of December 2015.

/S/ Hough-Lewis Dunn



**APPENDIX**



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00110-CR

_____


DEREK CLINTON WARD, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 42433-B


Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After Derek Clinton Ward entered an open plea of guilty to the state jail felony of theft of property valued at $1,500.00 or more but less than $20,000.00,[1] the trial court sentenced Ward to twenty-two months' incarceration. Ward has appealed, arguing that the trial court abandoned its duty to remain impartial in the sentencing process. We reject this argument and affirm the trial court's judgment and sentence.

## I. Procedural Background

Ward entered an open plea of guilty to the charged offense of theft April 9, 2015,[2] and returned for sentencing on May 21, 2015. It appears that although Ward had entered an open plea, there was something of an informal agreement between Ward and the State wherein the State would recommend that Ward would avoid incarceration if he appeared at the sentencing hearing with $3,750.00 in restitution. However, when Ward appeared at the sentencing hearing, he did not have the $3,750.00 in restitution; the only money proffered on his behalf was $1,000.00 brought by Ward's mother. After a hearing, the trial court sentenced Ward to twenty-two months' incarceration in a state jail facility.

---

[1]Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, sec. 31.03, 1973 Tex. Gen. Laws 883, 929–30 (amended 1975, 1977, 1981, 1983, 1985, 1987, 1989, 1991, 1993, 1995, 1997, 2001, 2003, 2007, 2009, 2011, 2015) (current version at TEX. PENAL CODE ANN. § 31.03 (West Supp. 2015)).

[2]The theft charge arose because Ward had taken an expensive welding machine from his then-employer. Initially, the employer was being reimbursed by withholding at least a portion of Ward's paycheck. However, the employer then indicated that Ward had also committed significant credit card abuse against the employer, and the informal repayment plan was abandoned. The credit card abuse case was not thereafter pursued due to problems with the loss of evidence, and Ward denied his culpability.

During the hearing on punishment, Ward related that he had become unemployed in the days immediately following the early April plea hearing, his job as an oil-field drilling hand having been eliminated during the downturn in the oil market. Ward (then thirty-six years old) testified that he elected to seek unemployment benefits rather than pursue employment. He went on to relate that he had had four back surgeries over the years and told the court about the physically demanding nature of his career choice. In doing so, Ward stated,

> [I]t was kind of nice to just let my back have a rest for a minute anyways. Working on a drilling rig when you're 36 years old and had as many spinal surgeries that I have had takes a toll on your body. I kind of looked at it as just taking a second off and giving my body a little rest.

Ward testified that in the weeks between losing his job and the sentencing hearing, he had applied for unemployment benefits, but that a few days before the hearing, he had been notified that he failed to include certain information with his application and that he was waiting for paperwork to be sent to him. He also said that although he had obtained job applications, he had not submitted them to prospective employers. He said he only took ibuprofen for his back pain, after successfully battling addiction to prescription pain medication. As for the job from which he had been laid off, he was "absolutely" eligible to be re-hired, and he already had "the paperwork" establishing that eligibility.

After the parties' examination of Ward drew to a close, the trial court asked him several questions. During this exchange, the trial court referred to the time intervening between Ward's plea hearing and the sentencing hearing as a "vacation." Although Ward did not object to that characterization at the time the trial court uttered it, Ward now objects to it on appeal. For the context in which this was said, we quote some of the trial court's statements as made during Ward's

3

sentencing hearing. After verifying the date that Ward had been terminated from his last job, the trial court said, "And so knowing that the State's recommendation is going to be two years state jail, you decide instead of finding a job to collect restitution, that you're going to take a vacation for a month and a half." Ward responded by protesting that the condition of his back had been the reason for not seeking employment.[3] The trial court then asked Ward why he should receive a suspended sentence. Ward answered, "Because I'll stick to the probation, complete the probation and give you no reason for feeling like I did anything unjust, sir."

Ward then called his mother (a loan officer for a mortgage company) to testify. She indicated that she was able and willing to pay $1,000.00 toward Ward's restitution at that time and that she could pay the remaining portion of the restitution on June 15, less than a month away.

After a short recess, the trial court accepted Ward's guilty plea and found him guilty as charged of theft of property valued at $1,500.00 or more, but less than $20,000.00. The court then described to Ward the factors taken into account in deciding the proper sentence:

> I have to decide if you deserve State Jail time, or do you deserve a shot at probation?
>
> When you pled guilty on April 9th, you knew what the State's recommendation was. You knew that your obligation under that recommendation was to come to Court today with $3,750 and the State would recommend a probated sentence.
>
> You personally came to Court with zero dollars.

---

[3]During this exchange, it was developed that Ward's driver's license had been re-activated after paying "some fees from a D.W.I." The trial court also asked Ward about a DWI charge from Shelby County, and Ward responded that that case had been dismissed. Ward admitted to the State that he had been charged with arson and assault/family violence (these charges arising from one incident with Ward's girlfriend), but claimed that the State had dropped the arson allegation while continuing prosecution of the assault case.

4

The factors I have to consider or send somebody to prison include their criminal history, obviously. If I was to consider just your criminal history, my decision is pretty easy. I would send you to prison, but I look at other factors, also.

I look at changes that they may have made, when the criminal history was. I look at several factors. Criminal history does vote against you. Your felony offense was long ago, so that helps you some.

I looked at the facts and circumstances of the offense.

I can't really consider much on the credit card abuse allegations, just because of the lack of proof before me. I do consider the statements you made to Investigator Mitchell and other factors.

Here's where it really comes down to my decision that I'm going to make today.

You pled guilty on April the 9th knowing that your part of the obligation was $3,750. You say you lost your job April 10th or 11th. Instead of going out and finding a new job whether it's flipping burgers at McDonald's for minimum wage or anything else, you testified that you wanted to take a month-and-a-half vacation to rest your back. It's not until recently, the last few days that you've even filed for unemployment. You come in here today and expect me to grant you probation. You expect me to grant you probation, and, say, well, I'm hoping that my mom's $1,000 is enough to bail me out. It's not this time.

I promise you if you had gone out and flipped burgers and showed me you were working, I would make a different decision than I'm about to make. But you didn't. No, rest my back. I'm going to see how much unemployment pays me instead of going out and working. That's the problem with today's society. We have a lot of people who are willing to see what the government is going to pay them instead of working.

It's not going to work here. 22 months State Jail. I will give you credit for time served.

Ward argues that the trial court abandoned its duty to remain a neutral and detached fact-finder; Ward complains of the trial court's use of the term "vacation" to describe the period between his being laid off and the sentencing hearing. Ward further points to the trial court's statement that he

5

would be unlikely to grant Ward much relief when the court was called upon to consider whether any of Ward's sentence would be reduced as a result of diligent participation in applicable programs while incarcerated.[4]

## II.    Failure to Preserve Argument

As previously mentioned, Ward lodged no objection to the trial court's use of the word "vacation" or any of the court's other statements at any time during the sentencing hearing (not while the trial court was questioning Ward, during the statement he gave in explaining his reasoning for the sentence that was announced, or during any other part of the hearing). In almost every circumstance, in order to preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2).

Although Ward attempts to invoke due process claims in his assertion that the trial court abandoned his role as judge for that of prosecutor, Ward offers no explanation or argument as to why we should address this unpreserved issue. In a somewhat similar situation, we observed that un-objected to "remarks and conduct of the [trial] court may not be subsequently challenged unless they are fundamentally erroneous." *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.) (citing *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978)).

---

[4]This was apparently a reference to Article 42.12, Section 15(h)(5) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 15(h)(5) (West Supp. 2014).

In such a situation, we used the egregious harm standard from *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984) (op. on reh'g), to determine if fundamental error had occurred. The alleged error must be "so harmful that the defendant was denied a fair and impartial trial." *Moreno*, 900 S.W.2d at 359. If we were to look at Ward's brief in the most generous light possible, we might say that he has claimed fundamental (or plain) error, i.e., the kind that obviates the need to preserve it at the time of trial. An appellate court may, in criminal cases, "tak[e] 'notice of fundamental errors affecting substantial rights although they were not' brought to the attention of the [trial] court." *Boler v. State*, 177 S.W.3d 366, 373 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (quoting *Jasper v. State*, 61 S.W.3d 413, 420 (Tex. Crim. App. 2001)). "No objection is required when the error is so egregious that it rises to constitutional dimensions." *Id.* (citing *Jasper*, 61 S.W.3d at 421).

The trial court's comments were neither egregiously harmful nor did they operate to deny Ward a fair and impartial trial. Certainly, the comments did not rise to the status of a complaint of constitutional dimension. Read in context, the trial court was commenting on Ward's behavior between the time of the plea hearing and the sentencing hearing. When he took Ward's plea of guilty, the trial court admonished him of the full range of punishment, including a probated sentence with community supervision. Based on comments by the court and the State at the two hearings, it is clear that some informal agreement had been reached to the effect that if Ward brought the full restitution amount to the sentencing hearing, the State would recommend a probated sentence. However, if there was no such restitution, then there would be no such recommendation. At the plea hearing, the trial court warned Ward that it was not bound by any

7

plea negotiations the parties might have, but also told Ward, "[I]f you do bring the restitution, then that may put this in a different situation. But right now it is an open plea, so you have certain obligations you need to meet." When testimony developed at the sentencing hearing that Ward had worked most of his adult life in the oil-field business but made a conscious decision not to seek employment just days after the plea hearing (even after the discussions which had evidently taken place regarding leniency if Ward were to make restitution), the trial court was left to draw conclusions about Ward's suitability for community supervision and regarding Ward's commitment to fulfill potential obligations.

The sentencing hearing occurred before the trial court, so there was no jury that could have been confused or influenced by the court's characterization of how Ward spent his time between the hearings. *See Moreno*, 900 S.W.2d at 359. It also does not appear that the trial court abandoned its role and acted as an advocate for the State. *See id*. The trial court's decision process should not be hindered by a constraint on its ability to explain the rationale behind its decision. The fairness of the proceedings was not impugned. Even if error had occurred, it would not have been in the nature of plain or fundamental error. Accordingly, absent such error, it was incumbent upon Ward to preserve these issues for our review. We overrule Ward's point of error.

We affirm the trial court's judgment and sentence.


Bailey C. Moseley
Justice

Date Submitted:     November 9, 2015
Date Decided:       November 10, 2015

Do Not Publish



# Court of Appeals
# Sixth Appellate District of Texas

## J U D G M E N T

Derek Clinton Ward, Appellant

No. 06-15-00110-CR     v.

The State of Texas, Appellee

Appeal from the 124th District Court of Gregg County, Texas (Tr. Ct. No. 42433-B). Memorandum Opinion delivered by Justice Moseley, Chief Justice Morriss and Justice Burgess participating.

As stated in the Court's opinion of this date, we find no error in the judgment of the court below. We affirm the judgment of the trial court.

We note that the appellant, Derek Clinton Ward, has adequately indicated his inability to pay costs of appeal. Therefore, we waive payment of costs.

RENDERED NOVEMBER 10, 2015
BY ORDER OF THE COURT
JOSH R. MORRISS, III
CHIEF JUSTICE

ATTEST:
Debra K. Autrey, Clerk